PAUL A. LAVALLEE, Administrator, *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

March 11, 1889.

**Railway—Statutory Liability to Employes.**—Chapter 13, Laws 1887, making railroad companies liable to an employe for injuries caused by the negligence of a co-employe, applies only to those employes engaged in operating the railroads, and so exposed to the peculiar dangers attending that business.

Action brought in the district court for Ramsey county, to recover damages for the death of plaintiff's intestate, caused, as alleged, by defendant's negligence.    At the trial, before *Brill*, J., and a jury, it appeared that on June 27, 1887, the decedent, who was employed as a boiler-maker's helper in defendant's shops at St. Paul, was directed by the boiler-maker to pick up some rubbish lying near a "dead" locomotive then standing on a track which ran into the boiler-shop. While so engaged, the smoke-stack of the locomotive (which two men were engaged in removing) fell upon him, inflicting the injuries of which he died.    At the close of the plaintiff's testimony, the action was dismissed, on defendant's motion, on the ground that the negligence, if any, which occasioned the accident was that of the decedent's fellow-servants, and that the case was not within Laws 1887, c. 13. A motion for a new trial was heard by *Wilkin* and *Brill*, JJ., and denied, and the plaintiff appealed.

*Henry C. James*, for appellant.

*M. D. Grover* and *Flandrau, Squires & Cutcheon*, for respondent.

GILFILLAN, C. J.   The plaintiff cannot recover, unless under chapter 13, Laws 1887.   The deceased and the persons through whose negligence he received the injury from which he died were fellow-servants, and the injury occurred from their negligence, and no other cause, so that upon the principles of the common law there could be no recovery against defendant.   Chapter 13 reads: "Every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof, by reason of the negligence of any other agent or servant thereof, without contributory negligence on his part, when sustained within this state; and no contract, rule, or regulation between such corporation and any agent or servant shall impair or diminish such liability: *provided*, that nothing in this act shall be so construed as to render any railroad company liable for damages sustained by any employe, agent, or servant while engaged in the construction of a new road, or any part thereof, not open to public travel or use."

The question is whether this statute includes all employes, agents, and servants of a railroad corporation, without regard to the character of the business in which they are employed.   Taken literally, it does.   But it is evident that in some respects, at least, it cannot be taken literally; for, as the court below in its memorandum, in deciding the motion for a new trial, aptly says: "According to its terms, the company is liable without regard to whether the employe is injured in the course of his employment or not."   Of course, that could not have been intended.   The plaintiff insists that the act applies to all employes; the defendant, that it applies only to those whose employment subjects them to the peculiar hazards pertaining to operating a railroad.

From the authorities we get very little help in determining the question.   Decisions from four states having statutes nearly similar to ours have been cited, to wit, Georgia, Wisconsin, Iowa, and Kansas. In *Thompson* v. *Central R. R. and Banking Co.*, 54 Ga. 509, the supreme court held that the statute was not limited to any class of employes; and in *Georgia R. Co.* v. *Ivey*, 73 Ga. 499, when asked to reconsider its former decision, and the point was for the first time made that the act, if given unlimited operation, would be unconstitutional,

the court adhered (much on the principle *stare decisis*) to its former decision, and also held the law constitutional.    In *Ditberner* v. *Chicago, Mil. & St. Paul Ry. Co.*, 47 Wis. 138, (2 N. W. Rep. 69,) the supreme court of that state held the statute of that state to be constitutional, and not to be limited to those employed in operating railroads. In Iowa, under the original act, (of 1862,) the supreme court in *McAunich* v. *Miss. & Mo. R. Co.*, 20 Iowa, 338, held the act valid, on its assumption that it embraced only those employed in the business of operating a railroad; and in the case of *Deppe* v. *Chicago, R. I. & Pac. R. Co.*, 36 Iowa, 52, the court emphasized its previous construction of the act, saying: "The manifest purpose of the statute was to give its benefits to employes engaged in the hazardous business of operating railroads.    When thus limited, it is constitutional; when extended further, it becomes unconstitutional."    The supreme court of Kansas, in *Missouri Pac. Ry. Co.* v. *Haley*, 25 Kan. 35, and *Union Pac. Ry. Co.* v. *Harris*, 33 Kan. 416, (6 Pac. Rep. 571,) holds the act of that state, adopted from Iowa, to be valid, and gives it the same construction. In *Herrick* v. *Minn. & St. Louis Ry. Co.*, 31 Minn. 11, (16 N. W. Rep. 413,) this court held that the Iowa statute did not violate that clause in the 14th amendment to the constitution of the United States which declares that "no state shall deny to any person within its jurisdiction the equal protection of the laws;" and in the case of *Missouri Pac. Ry. Co.* v. *Mackey*, 127 U. S. 205, (8 Sup. Ct. Rep. 1161,) the supreme court of the United States held the Kansas statute not in violation of that clause of the amendment, nor of the clause of the amendment declaring that no state "shall deprive any person of life, liberty, or property without due process of law;" the court saying, in reference to the objection that the statute denied to all persons the equal protection of the laws: "Such legislation is not obnoxious to the last clause of the 14th amendment, if all persons subject to it are treated alike under similar circumstances and conditions in respect both of the privileges conferred and the liabilities imposed."    In the case referred to there was no question that it came within the operation of the statute,' if it had any effect whatever.    The construction of the act was not in question.

The objection made to the construction of the statute which the ap-

pellant contends for is that, upon that construction, the statute would be what is sometimes called class legislation, by imposing upon one class of persons liabilities from which other persons in precisely the same circumstances are exempt. It is to be presumed, unless the language used excludes such presumption, that the legislature does not intend an act to so operate as to be open to that objection. Of course, the legislature must have the power to classify, when necessary, subjects for legislation, and make provisions for subjects within one class, without making them applicable to subjects in another; and the proper exercise of that power is not liable to the objection that it is class legislation. The practical limitation of the power to classify so as to avoid the imputation was stated by this court in *Nichols* v. *Walter*, 37 Minn. 264, (33 N. W. Rep. 800,) as "that the classification shall be made upon some apparent natural reason, some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them." Applying this test, it is impossible to avoid the conclusion that the statute, if construed as appellant claims it ought to be, would be class legislation, not applying upon the same terms to all in the same situation, nor having any apparent natural reason for any distinction.

The frequency and magnitude of the dangers to which those employed in operating railroads are exposed; the difficulty, sometimes impossibility, of escaping from them with any amount of care, when they come; the fact that a great number of men are employed, co-operating in the same work, so that no one of them can know all the others, their competency, skill, and care, so that he may be said to voluntarily assume the risk arising from the want of skill or care by any one of the number,—are a sufficient reason for applying a rule of liability on the part of the employer to the employe so employed different from that ordinarily applied between master and servant. But no just reason can be suggested why such difference should be founded, not on the character of the employment, nor of the dangers to which those employed are exposed, but on the character only of the employer. We can see why the employer's liability should be

greater when the business is that of operating a railroad, but cannot see why one individual or corporation should be held to a rule of liability different from that applied to another, when the employment and its hazards are precisely the same.    We cannot illustrate this better than by using an illustration employed by the supreme court of Iowa in *Deppe* v. *Chicago, R. I. & Pac. R. Co.*, 36 Iowa, 52 : "Suppose a railroad company employ several persons to cut the timber on its right of way where it is about to extend its road, and the landowner employs a like number of persons to cut the timber on a strip of equal length along-side such right of way.    If one of each set of employes shall be injured by the negligence of a co-employe, and the employe of the railroad company can, under the statute, maintain an action against his employer, and the other cannot, then it is clear that the law does not apply upon the same terms to all in the same situation."    The legislature might intend to make such a difference, but it would require unmistakable terms to make us think so.    We do not find such to be the character of the terms used in this statute. That language is rather indicative that it was intended to confine its operation to the case of employes engaged in operating a railroad, and necessarily exposed to the hazards attending that business, and not to take in the case of all employes of a railroad company, without regard to the kind of work in which they are engaged.    No other reason can be given for excepting in the proviso "employes while engaged in the construction of a new road, or part thereof, not open to public travel or use," though some of the dangers of that business may be in some degree similar to those of operating a road after it is open to public travel and use—that is, when it is operated.    The terms of the proviso go far to show an intent to limit the effect of the act to companies operating railroads, and in that part of their business.    The deceased, not being employed in operating the railroad, did not come within the rule established by the act.

Order affirmed.