ANDREW JOHNSON *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

April 30, 1890.

**Railway—Negligence of Fellow-Servant—Statutory Liability.**—*Held,*
(following *Lavallee* v. *St. Paul, M. & M. Ry. Co.*, 40 Minn. 249,) that
Laws 1887, *c.* 13, applies only to employes of railway corporations ex-
posed to the peculiar hazards connected with the use and operation of the
road.

**Same—Servants Engaged in Repairing Bridge.**—A crew of men, of
which plaintiff was one, was engaged in repairing a bridge on defendant's
road, and in performing the work it was necessary to leave the draw
partly open. Through the negligence of one of the crew, the draw was
left unfastened, and was blown shut by the wind, and injured the plain-
tiff while at work between the stationary part of the bridge and draw.
*Held,* that defendant was not liable.

Action brought in the district court for St. Louis county, to recover
$10,250 for personal injuries. Trial before *Stearns*, J., who ordered

a dismissal at the close of plaintiff's case.    Appeal by plaintiff from an order refusing a new trial.

*Draper & Davis,* for appellant.

*White & Reynolds,* for respondent.

MITCHELL, J.    The injury to plaintiff having been caused by the negligence of his fellow-servant, he cannot recover, unless under Laws 1887, *c.* 13.    In *Lavallee* v. *St. Paul, M. & M. Ry. Co.,* 40 Minn. 249, (41 N. W. Rep. 974,) in which this statute was very fully considered, we held that it applied only to the peculiar hazards incident to the use and operation of railroads; that it must be construed as designed exclusively for the benefit of those who are in the course of their employment exposed to such hazards, and whose injuries are caused by them.    And the more we consider the question the more are we confirmed in the opinion that it is only when construed as subject to some such limitation that the statute can be sustained as a valid law.    As was said in the case referred to, to avoid the imputation of "class" legislation, the classification, in cases of special legislation, must be made "upon some apparent, natural reason,— some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them."    If a distinction is to be made as to the liability of employers to their employes, it must be based upon a difference in the nature of the employment, and not of the employers.    One rule of liability cannot be established for railway companies, merely as such, and another rule for other employers, under like circumstances and conditions, unless upon the theory suggested in *Mo. Pac. Ry. Co.* v. *Mackey,* 127 U. S. 205, (8 Sup. Ct. Rep. 1161,) that the state may "prescribe the liabilities under which corporations created by its laws shall conduct their business in the future, where no limitation is placed upon its power in this respect by their charters,"—a proposition which, as thus broadly stated, that court, in view of its later utterances, could hardly have intended to announce.    Indeed, the particular question now under consideration was not before the court, and, presumably, was not in mind.    Neither would it relieve the act from the imputation of class legislation that it applies alike to all railroads.

It has been sometimes loosely stated that special legislation is not class, "if all persons brought under its influence are treated alike under the same conditions." But this is only half the truth. Not only must it treat alike, under the same conditions, all who are brought "within its influence," but in its classification it must bring within its influence all who are under the same conditions. Therefore, if a distinction is to be made between railway corporations and other employers as respects their liability to their employes, it must be based upon some difference in the nature of the employment, and can only extend to cases where such difference exists. Hence most courts, as notably in Iowa and Kansas, have held that similar statutes, although general in their terms, embrace only "the peculiar hazards of railroading." But, when we come to examine the adjudicated cases, we confess we are unable to discover any definite, consistent, or logical rule which the courts have applied in determining whether, upon the facts of a particular case, it fell within or without the statute. In some cases it has been held that the statute applied because the duty of the employes required them to ride upon the cars to the place of work, although the injury was not sustained while thus riding, and was not caused by, or in any manner connected with, the operation of the road. Such a position seems to us wholly illogical. Other cases have been held within the statute because the work being performed was necessary to the use and operation of the road, although the injury sustained was not caused by, or connected with, such use and operation. This, we think, is equally illogical. In fact, the proposition is so broad and indefinite as to bring within the act all employes, regardless of the nature of their employment; for the work of all, even clerks in offices, is, in a sense, necessary to the use and operation of the road. Therefore, after mature consideration, our conclusion is that, if any limitation is to be placed by the courts upon the application of this statute, (and on constitutional grounds there must be,) the only one which will furnish any definite or logical rule is to hold that it only applies to those employes who are exposed to the peculiar hazards incident to the use and operation of railroads, and whose injuries are the result of such dangers. We do not mean to say that there may not be reasons suggested by some

differences in the nature of the employment which would warrant the legislature in placing some other hazards within the provisions of such a law; but, if the courts should attempt to impose upon the general language of this statute any other limitation than the one suggested, they would be all at sea, without either rudder or compass.

Applying the test suggested, it is clear that plaintiff's case is not within the provisions of the act. A crew of men, of which plaintiff was one, was engaged in repairing a drawbridge on defendant's railroad. In doing this work it was necessary to leave the draw partly open. Plaintiff was at work between the stationary part of the bridge and the draw, when the wind blew the draw shut, and injured him. The draw might and should have been fastened open, which was omitted to be done through the negligence of the foreman of the crew. Plaintiff was not engaged in operating the road, nor was his injury caused by any of the hazards incident to its operation, any more than in the case of the helper in the repair-shops in the *Lavallee Case.* As suggested by counsel for defendant, suppose there had been a wagon bridge over the St. Louis river, alongside of this railroad bridge, and one of a crew engaged in repairing it had been injured under like circumstances. He could not have recovered from his employer. Yet the actual situation, both as to the nature of the employment and the cause of the injury, would have been the same in either case.

Order affirmed.