STATE OF IOWA V. O. GARBROSKI, Appellant.

**Constitutional Law:** PEDDLER'S TAX: *Exemption of Union soldiers from.* Under Constitution, article 1, section 6, providing that all laws of a general nature shall have a uniform operation, and that the general assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens. Code, section 1347, requiring all peddlers plying their vocation outside of any city or town to secure a license from the county auditor, and to pay a tax therefor, but specially exempting from the payment of such tax persons who have served in the Union army or navy, is unconstitutional and void, as an unreasonable classification.

*Appeal from Mahaska District Court.*—HON. D. RYAN, Judge.

SATURDAY, MAY 19, 1900.

THE defendant was accused and convicted of peddling in the county, outside of a city or incorporated town, without a license from the auditor, and appeals.—*Reversed.*

*Byron W. Preston* and *H. H. Sheriff* for appellant.

*L. C. Blanchard, James Carroll,* and *Milton Remley,* Attorney General, for the State.

LADD, J.—The evidence tended to show that defendant peddled goods in Mahaska county, outside of any city or town, without first having obtained a license from the county auditor so to do. He asserts that, even though the evidence may have warranted his conviction, the statute under which the prosecution was had is in contravention of the constitution of the state. Section 1347 of the Code reads: "Peddlers plying their vocation outside of a city or town shall pay for the use of the county an annual tax of ten dollars; those with a vehicle drawn by one animal, twenty-five dollars; those with four or more animals, seventy-five dollars. But the board of supervisors of any county may remit the tax where it is deemed that the articles to be sold are of an educational nature, or where the parties desiring to peddle are, because of age or infirmity, incapacitated for manual labor. Nothing in this section shall be held to apply to parties selling their own work or production, either by themselves or employes, nor to persons who have served in the Union army or navy, or to persons selling at wholesale to merchants, nor to transient venders of drugs." The particular point made is that, as it grants immunity from the tax to peddlers who served in the army or navy of the United States during the Civil War, it is in conflict with section 6 of article 1 of the constitution. That section reads: "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens." That this statute grants a privilege to persons who have served in the Union army and navy, not available to others, is manifest. It is the

privilege of plying the vocation of peddling outside of cities
and towns without the payment of the annual tax exacted
from others.    This is not dependent on a present situation
or condition, nor on relations or circumstances suggesting
the necessity or propriety of different legislation for the
exempted class.    The authorities generally recognize that, for
the purposes of efficient and beneficial legislation, it is often
necessary to divide the subjects upon which it operates into
classes.    As said by Justice Field in *Railway Co. v. Mackey,*
127 U. S. 205 (8 Sup. Ct. Rep. 1161, 32 L. Ed. 107). "The
greater part of all legislation is special, either in the objects
sought to be attained by it, or in the extent of its application."
The extent to which division may be carried without running
into special, or what is known as "class" legislation, is some-
times difficult to determine.    All the authorities agree that
the distinction in dividing may not be arbitrary, and must
be based on differences which are apparent and reasonable.
Thus, the supreme court of Minnesota, in *Nichols v. Walter,*
37 Minn. 262 (33 N. W. Rep. 800), declared: "The true,
practical limitation of the legislative power to classify is
that the classification shall be upon some apparent natural
reason,—some reason suggested by necessity; by such a dif-
ference in the situation, and circumstances of the subjects
placed in different classes as suggests the necessity or pro-
priety of different legislation with respect to them."    This
was approved in *Lavallee v. Railway Co.,* 40 Minn. 249 (41
N. W. Rep. 974).    In *Johnson v. Railway Co.,* 43 Minn. 222
(45 N. W. Rep. 157, 8 L. R. A. 419), the same court,
through Mitchell, J., said: "It has sometimes been loosely
stated that special legislation is not class, if all persons
brought under its influence are treated alike under the same
conditions.    But this is only half the truth.    Not only
must it treat alike, under the same conditions, all who are
brought within its influence, but in its classification it must
bring within its influence all who are under the same condi-
tions."    In *State v. Hammer,* 42 N. J. Law, 439, the su-

preme court of New Jersey held that: "The true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as a basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects and places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will in some reasonable degree, at least, account for or justify the restriction of the legislation." The supreme court of Tennessee, in *Sutton v. State,* 96 Tenn. 696 (36 S. W. Rep. 697, 33 L. R. A. 589), very tersely states the law to be that legislation, to be constitutional and valid, "must possess each of two indispensable qualities: *First,* it must be so formed as to extend to and embrace equally all persons who are or may be in the like situation or circumstances; and, *secondly,* the classification must be natural and reasonable, and not arbitrary or capricious." To the same effect, see *State v. Loomis,* 115 Mo. 307 (22 S. W. Rep. 350, 21 L. R. A. 789); *State v. Haun,* 61 Kan. 146 (59 Pac. Rep. 341); *State v. Goodwill,* 33 W. Va. 179 (10 S. E. Rep. 286, 6 L. R. A. 621); *Ex parte Jentzsch,* 112 Cal. 468 (44 Pac. Rep. 803, 32 L. R. A. 665); *City of Evansville v. State,* 118 Ind. Sup. 426 (21 N. E. Rep. 267, 4 L. R. A. 93); *Magoun v. Bank,* 170 U. S. 283 (18 Sup. Ct. Rep. 594, 42 L. Ed. 1037. In the last case, Justice McKenna, speaking of the equal protection of the laws required by the fourteenth amendment to the constitution of the United States, said: "It does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both

in the privileges conferred and the liabilities imposed." The
same court, speaking through Justice Brewer, in *Railway
Co. v. Ellis,* 165 U. S. 150 (17 Sup. Ct. Rep. 255, 41 L. Ed.
666), declared that "the differences which will support class
legislation must be such as in the nature of things furnish
a reasonable basis for separate laws and regulations."

It will be observed that while the language of the courts
differs somewhat, there is no controversy concerning the
rules which govern in determining what legislation is in-
hibited by the constitution as class. The difficulty arises in
their application. No unvarying test of likeness or unlike-
ness of conditions and circumstances can well be laid down.
Nor is this desirable. Necessarily, much must depend on
the facts of each case. The classification here attempted
rests solely on a past and completed transaction, having no
relation to the particular legislation enacted. All citizens
are divided into two classes,—those who served in the army
and navy thirty-five years ago, and all those who did not.
True, as suggested, the veterans came from no particular
class; but the trouble with this statute is that it attempts to
make of them a class in legislation, in the operation of which
there can be no substantial distinction between them and
others. In present conditions and circumstances, there are
no differences between them, in their relation to society and
the administration of the law, and other citizens of the state.
Possibly a veteran soldier or sailor would be preferred, every-
thing else being equal, for civil office, because of superior
fitness, resulting from discipline of service in war; for "it
is distinctly a public purpose to promote patriotism, and to
make conspicuous and honorable any exhibition of courage,
constancy, and devotion to the welfare of the state." But
the work of a peddlar calls for no qualities such as a soldier
or sailor acquires in the service. Equality in right, privi-
lege, burdens, and protection is the thought running through
the constitution and laws of the state; and an act inten-
tionally and necessarily creating inequality therein, based

on no reason suggested by necessity or difference in condition or circumstances, is opposed to the spirit of free government, and expressly prohibited by the constitution. If the ultimate object of this section was, as suggested, to prevent the separation of society into classes or castes such as exist in other lands, it may not be amiss to observe that these, in large part, had their origin in the honors and emoluments bestowed because of achievements in arms and military service. *In re Keymer,* 148 N. Y. 219, (42 N. E. Rep. 667, 35 L. R. A. 447), the court of appeals of New York, in holding that veterans might not, under the constitution of that state, have preference to certain appointments in the civil service, regardless of qualifications, as provided by statute, said: "In the first place, this act refers only to veterans of the Civil War, and creates a favored class. The veteran who seeks a place in the civil service, where compensation does not exceed four dollars per day, is exempted from competitive examination, while every other citizen must submit to it. This is contrary to the letter and spirit of the constitution, and renders the act void." In *Brown v. Russell,* 166 Mass. 14 (43 N. E. Rep. 1007, 32 L. R. A. 253), the supreme judicial court of Massachusetts gave the negative answer to this question: "Can the legislature constitutionally provide that certain public offices and employments which it has created shall be filled by veterans, in preference to all other persons, whether the veterans are or are not found or thought to be actually qualified to perform the duties of the offices and employments by some impartial and competent officer or board charged with some public duty in making the appointments?" See *Sewickley School Dist. v. Osburn School Dist.,* 19 Pa. Co. Ct. R. 257; *In re Sweeley,* 33 N. Y. 369. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are declared to be entitled to different privileges, under the same conditions. It is then that discriminations may be said to impair

that equal right which all can claim in the operation of the laws. *Soon Hing v. Crowley,* 113 U. S. 703 (5 Sup. Ct. Rep. 730, 28 L. Ed. 1145). In requiring the license fee from one class of persons for peddling in the country not exacted from another following the same vocation, there was unwarranted discrimination, rendering the statute void. It undertakes to grant to certain citizens or classes of citizens privileges or immunities that on the same terms do not belong to all. The constitution aims at equality of rights, privileges, and capacities, and the state has no favors to bestow, except such as, from the nature of the case, cannot be possessed and enjoyed by all. As said by Judge Cooley: "Privileges may be granted to particular individuals, when by so doing the rights of others are not interfered with; but every one has the right to demand that he be governed by general rules, and a special statute which singles his case out, to be regulated by different laws from those that are applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free government. Those who make the laws are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for the rich and poor,—for the favorite at court and the countryman at the plow." Cooley, Constitutional Limitations (6th ed.), section 482. Or, as declared in *State v. Goodwill,* 33 W. Va. 179 (10 S. E. Rep. 285, 6 L. R. A. 623): "The right of every individual must stand or fall by the same rule of law that governs every other member of the body politic, under similar circumstances; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by restricting the privileges of certain classes of citizens, and not all others, when there is no public necessity for such discrimination, is unconstitutional and void." The classification attempted by this statute is based on no apparent necessity, or difference in conditions or circumstances that have any relation whatever to the em-

ployment in which the veteran of the Civil War is author-
ized to engage without paying license. It savors more of
philanthropy (worthy of the highest commendation, in its
proper sphere) than of reasonable discrimination, based on
real or apparent fitness for the work to be done.—Reversed.