A. W. TAY v. WILLMAR & SIOUX FALLS RAILWAY COMPANY.[1]

February 8, 1907.

Nos. 15,029—(140).

**Question for Jury.**

The plaintiff was a sectionman in the employ of the defendant and while engaged with his foreman in repairing a side track in its railway yard, which necessitated the taking out of an old rail and putting another in its place, he was injured by the negligence of his foreman in releasing his hold upon a rail without warning and letting it fall

[1] Reported in 110 N. W. 433.

upon him.   *Held,* upon a consideration of the facts stated in the opinion, that it was a question for the jury whether the plaintiff's employment involved an element of hazard peculiar to railroad business.

Action in the district court for Kandiyohi county to recover $15,000 for personal injuries.   The case was tried before Qvale, J., who, at the conclusion of plaintiff's testimony, granted a motion for dismissal. From an order denying a motion for a new trial, plaintiff appealed. Reversed and new trial granted.

*W. E. Dodge, E. L. Sutton,* and *George H. Otterness,* for appellant.
*W. R. Begg, C. H. Winsor, W. F. McNaughton,* and *Samuel Porter,* for respondent.

START, C. J.

The plaintiff was in the employ of the defendant as a sectionhand, and on March 9, 1906, he was injured while engaged with the section foreman in the repair of the defendant's railway tracks by the alleged negligence of the foreman, and he brought this action in the district court of the county of Kandiyohi to recover the damages sustained by reason of the injury.   The trial court at the close of the plaintiff's evidence dismissed the action, and he appealed from an order denying his motion for a new trial.

The basis of the decision of the trial court was that the work the plaintiff was engaged in at the time he was injured was not such as to expose him to any of the hazards incident to railroading.   This is the only question for our decision.   The facts are not disputed and are substantially as follows:   The defendant is a railway corporation and operates a line of railway from Willmar southwesterly through the village of Ruthton, this state, to points without the state.   The plaintiff on and prior to March 9, 1906, resided at Ruthton, a station on defendant's line, and then was, and for sixteen months had been, in the employ of the defendant as a sectionhand.   The section crew consisted of himself and his foreman, who had the care and repair of a section of the line some six miles long, which included the yard and tracks at Ruthton, consisting of a main track, a passing track, and a side or industry track.   Both of the latter were east of the main track in the order named.   The passing track was connected with the main track by two switches one-quarter of a mile apart, the passing track

was one-quarter of a mile in length, and the side track was connected with the passing track by two switches, the side track was one hundred fifty feet shorter at each end than the passing track, and there was that distance between the switches connecting the passing track with the main track and the switch connecting the side track with the passing track. The passing track and the side track were both so constructed with reference to the main track that trains or cars from either direction could be switched on to either track. To the east on the side track there were located several grain warehouses, a stockyard, a wood and coal yard and lumber yard. All cars that were to be loaded at the village of Ruthton were placed upon the side track and there loaded, and all cars of freight for this station were shunted on the side track for the purpose of unloading. Carloads of freight coming in from the south were often placed on the side track by a flying switch. The side track was almost daily used for the switching of the cars and by the local freight trains. It was necessary to unlock both switches to make a flying switch.

On the evening of the day before the accident the plaintiff and his foreman observed that the side track was out of repair, and the foreman then decided to proceed with the work of repairing it on the following morning. Accordingly at about nine o'clock the next morning, March 9, 1906, the work of repair was commenced by the plaintiff and his foreman. The work consisted of taking out and putting back a rail which had tipped over, taking out a worn rail and replacing it with another, and taking out and cutting off a third rail in order that it might fit into place with the new rail. At the time of the accident the tipped-over rail had been righted, but not fastened or spiked to the ties. The wornout rail had been taken out and a new one had been brought from the north end of the side track on a hand car and placed at the side of the track where it was to be used. The third rail had been cut around ready to be broken off in the usual way, which was to cut around the rail while it remained upon the ground, then to lift it up and let it drop across another rail, the impact breaking it where it had been cut. The rail was so heavy that the plaintiff and his foreman could lift but one end of it at a time. It was while they were in the act of thus breaking the rail that the accident to the plaintiff occurred.

On previous occasions it had been and was the custom of the foreman when he and the plaintiff were so breaking rails to give him a signal or warning when to let go or drop the rail. The foreman omitted so to do at the time of the accident. Both sectionmen, as was customary, took hold of the rail at one end about four feet apart and lifted it up preparatory to dropping it across another rail to break it off. When it was lifted to a given height the foreman called out "higher" whereupon the foreman immediately let go of the rail, while the plaintiff attempted to raise it higher and being unable so to do or to support the great weight of the rail alone, and by reason of the foreman releasing his hold thereof without warning to plaintiff, it fell on plaintiff's legs, and he thereby sustained the injuries complained of, which consisted of a complete fracture of the tibia of the left leg, four inches above the left ankle, and injuries to both ankles.

The rails taken out for the purpose of repairing the track were distant between eighty four and ninety six feet from the south switch of the side track, so that the three rails immediately north of the switch remained undisturbed, while the next three were taken out. When the work of repair commenced, as well as during its progress, the foreman stated that it was necessary to hasten the work in order to have the track repaired before the arrival of trains, the foreman having reference to a freight train and a passenger train, both due to arrive at the station of Ruthton from the south at the same time, to wit, 11 :27 a. m. on that day, which was the schedule time of arrival of the trains, of which both the plaintiff and the foreman had notice and knowledge. The direction of the foreman to hasten the work was obeyed by the plaintiff. The switches were used and operated exclusively by the trainmen, and, except when so used, they remained locked, and were so locked at the time of the accident. It does not appear whether the freight train or any train on that day had any use for the side track for switching or any other purpose. It does appear that any necessary switching, picking up, or spotting of cars on the side track could as well have been done from the south through the north switches and without interfering with, or danger to, sectionmen, train crew, or train, notwithstanding the nonrepair or defect in the side track above mentioned.

The plaintiff and the foreman were fellow servants engaged in the same common employment and the question of vice principal does not enter into this case. The question, then, is whether the facts stated show, as a matter of law, that the ·plaintiff's employment at the time he was injured did not involve an element of hazard or condition of danger peculiar to railroad business. The statute abolishing the fellow-servant rule as to employees of every company owning or operating a railroad is this:

> Negligence of Fellow Servant. Every company owning or operating, as a common carrier or otherwise, a railroad, shall be liable for all damages sustained within this state by any agent or servant thereof, without contributory negligence on his part, by reason of the negligence of any other servant thereof, and no contract, nor any rule or regulation of such company, shall impair or limit such liability. But this section shall not be so construed as to render any railroad company liable for damages sustained by any such agent or servant while engaged in the construction of a new road, or any part thereof not open to public travel or use. R. L. 1905, § 2042; G. S. 1894, § 2701.

The application of this statute, notwithstanding its general terms, has been restricted by the uniform decisions of this court to railway employees who are injured when exposed to the peculiar hazards incident to the use and operation of railroads, and whose injuries are the result of such dangers. The decisions are all referred to and carefully analyzed in the case of Jemming v. Great Northern Ry. Co., 96 Minn. 302, 104 N. W. 1079, 1 L. R. A. (N. S.) 696. This case is relied upon by the defendant as sustaining the conclusion of the trial court. Plaintiff in that case was one of a crew employed by the railway company, and he was injured while he was assisting as a pitman in operating a steam shovel in a gravel pit. The shovel was located upon movable sections of track about six feet long which were not connected with any other track. When it became necessary to move the shovel forward, a section of the track was taken up from the rear and placed in front of the shovel. It was the duty of the pitman to level off a place for a section of the track in front of the shovel and then pick up the ties

and rails constituting the rear section and place them in front of the shovel. The plaintiff while so engaged was hit and injured by the dipper connected with the shovel by reason of the alleged negligence of the engineer. It was held that the danger to which the plaintiff was exposed was not a hazard peculiar to the operation of a railway, but one incidental to the management of the machinery, and that the accident would have been as liable to occur if the steam shovel had been operated in excavating for the foundation of a building by parties not in the employ of a railway company.

The facts in the case cited are not analogous to the facts in the case at bar, which are somewhat similar to the facts in the case of Blomquist v. Great Northern Ry. Co., 65 Minn. 69, 67 N. W. 804. In that case the plaintiff was a sectionman employed with others in repairing the main track of the defendant's railroad by taking up rails, putting in new ties and replacing the rails, a work which had to be done with great and extraordinary haste in order to avoid danger to trains that were or might be approaching. While so engaged the plaintiff and another sectionman were carrying a heavy rail and he was injured by the sectionman negligently releasing his hold on the rail and letting it fall upon the plaintiff. It was held that the plaintiff's employment involved an element of hazard peculiar to railroad business and that the statute applied.

In the case of Anderson v. Great Northern Ry. Co., 74 Minn. 432, 77 N. W. 240, the plaintiff, a railway employee, was at work repairing the defendant's roadbed and was injured by the negligence of his fellow servant in releasing, without warning, a track jack which held up a part of the track. It was held, upon a consideration of the evidence, that it was a question for the jury whether the work was being executed under such conditions as to expose the plaintiff to hazards incident to the use and operation of railroads.

In Kreuzer v. Great Northern Ry. Co., 83 Minn. 385, 86 N. W. 413, the plaintiff was injured by the negligence of his fellow servant, while they were engaged in clearing a wreck from the defendant's railway tracks, which caused the roof of a car to fall upon plaintiff. It was held that the evidence made it a question of fact whether the work was being done under such circumstances as to expose the plaintiff to the hazards of railway service.

The cases cited clearly indicate that no hard and fast rule or academic definition has been or can be formulated whereby it may be determined what is a railroad hazard and that each case must be adjudged upon its special facts. And further, that the statute is to be treated as a remedial one for the benefit of railway employees, and that it is only in exceptional cases that any railroad employee can be excluded from its benefits. Whether a particular case is within the statute is a question of fact for the jury if the facts are in dispute, or, if admitted, different minds might reasonably draw different conclusions from them. Tested by this rule, and following the cases to which we have referred, we hold that the admitted facts in this case do not show, as a matter of law, that the employment of the plaintiff when injured did not involve an element of hazard or condition of danger peculiar to railroad business. The question was one of fact, and the trial court erred in not submitting the case to the jury. As there must be a new trial for this error, we refrain from discussing the facts.

Order reversed, and a new trial granted.