## LOUIE HANSON v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

May 28, 1909.

Nos. 16,076—(67).

**Railroad Hazard.**

A railroad hazard may exist, within the meaning of section 2042, R. L. 1905, when the work engaged in is so intimately connected with the move-

[1]Reported in 121 N. W. 607.

ment of the engines, cars, and trains of the railroad as to render it more dangerous for that reason.

**Same.**

> *Held,* the work of removing merchandise from wrecked cars, the result of a collision in a railroad yard, may embrace elements of danger peculiar to railroading, when performed in haste, under the direction of a foreman, and under unusual circumstances, such as working at night and over hours, for the purpose of clearing the tracks for the movement of trains.

Action in the district court for Becker county by the guardian ad litem of plaintiff to recover $1,990 for personal injuries sustained by Louie Hanson while in the employ of defendant. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $480. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*C. W. Bunn* and *L. T. Chamberlain,* for appellant.

*M. J. Daly,* for respondent.

Lewis, J.

On September 25, 1907, at 8:30 o'clock p. m., a collision occurred between two freight trains in the yards of appellant at Lake Park, which shattered several cars and scattered the contents. Respondent was a section man, living at Audubon, Minnesota, six miles east of Lake Park, and was directed by his foreman to join a crew to go to Lake Park for the purpose of clearing up the wreck. They arrived about an hour after the collision, and respondent, together with nearly fifty other men, was engaged in clearing away the wreckage all that night and all the next day, until about seven o'clock in the evening, when the accident occurred. The yards at Lake Park consisted of a main track, which ran along the north side, and three or four side tracks, to the south of the main track, all of which were connected with the main track at both ends. After the collision, appellant's trains were operated over one of the side tracks and through traffic was not interrupted. One of the freight cars, loaded with rolls of carpet, was completely derailed and thrown clear of the main track, and the foreman in charge of the work caused a box car to be placed

on the side track, next to the main track, and in vicinity of the wrecked car, and respondent, with others, was directed to load the carpet into the empty box car. It was about seven o'clock in the evening of the twenty-sixth, quite dark, and respondent was in the car piling the rolls of carpet in tiers, while some of the other men carried the rolls from the wrecked car and put them into the box car. One of the rolls, weighing about seventy-five pounds, was negligently thrown into the car by these men, and struck respondent on his leg, causing injuries.

The court submitted the case to the jury to determine whether the men were engaged in a work peculiar to the operation of railroads and whether appellant's servants were guilty of negligence in handling the carpet. A verdict was returned for respondent, and on this appeal the court is asked to decide that it conclusively appears that the work in which respondent was engaged was not a railroad hazard. The argument in support of this position, is based mainly on the following cases: Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974; Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; Pearson v. Chicago, M. & St. P. Ry. Co., 47 Minn. 9, 49 N. W. 302; Holtz v. Great Northern Ry. Co., 69 Minn. 524, 72 N. W. 805; Weisel v. Eastern Ry. Co., 79 Minn. 245, 82 N. W. 576; Jemming v. Great Northern Ry. Co., 96 Minn. 302, 104 N. W. 1079, 1 L. R. A. (N. S.) 696. Most of these cases have often been reviewed, but it will be necessary to briefly refer to them, and to some other decisions, in order to distinguish the principle which has guided the court in dealing with this troublesome question.

In the Lavallee case, a smokestack fell from a locomotive standing still in the repair shops and struck a helper, who at that time was engaged in picking up rubbish. In the Johnson case the plaintiff was injured while working on a drawbridge by the closing of the bridge through the action of the wind. In the Pearson case, a crew of section men, including Pearson, were engaged in loading railroad iron from the ground to a flat car, when one of the crew negligently let one of the iron rails fall on Pearson's arm. The Weisel case was decided upon the ground that the tender was standing still at the time a chunk of coal fell from it, and that the cause of the fall

was not traceable to any act connected with the operation of the railroad. In the Jemming case it was said: "It [the danger] was such as is incidental to the management of all machinery, and the accident would have been as liable to occur had the steam shovel been operated by parties not in the employ of a railway company in excavating for a canal or for the foundation of a building. It was a hazard connected with the operation of a steam shovel, and the mere fact that the shovel belonged to a railway company, and was being operated by its employees did not change its nature." In all of these cases it was held that the work in which the injured party was engaged did not constitute any part of the operation of the railroad.

In the following cases the work was considered to be fairly a part of the operation of the road: Smith v. St. Paul & D. R. Co., 44 Minn. 17, 46 N. W. 149, and Steffenson v. Chicago, M. & St. P. Ry. Co., 45 Minn. 355, 47 N. W. 1068, 11 L. R. A. 271, were handcar cases, where the plaintiffs were injured while engaged in operating the cars on the track. In Nichols v. Chicago, M. & St. P. Ry. Co., 60 Minn. 319, 62 N. W. 386, the employees of the company were engaged in straightening out a wire cable by attaching one end to a switch and the other to an engine on the track. In Mikkelson v. Truesdale, 63 Minn. 137, 65 N. W. 260, the Nichols case was approved and followed, and it was declared that an injury which occurred to a locomotive wiper in a roundhouse, caused by the negligent moving of the engine, was a railroad hazard.

For the first time a new feature, called the "element of haste," was developed in Blomquist v. Great Northern Ry. Co., 65 Minn. 69, 67 N. W. 804. In that case the section men, including Blomquist, were engaged in taking a heavy iron rail from the main track for the purpose of putting in new ties. They were required to do this work hastily in order to get the track ready for trains. The rail was negligently dropped by one of the men, and the court said: " * * * Plaintiff's employment involved an element of hazard or condition of danger peculiar to the railroad business, and intimately connected with and growing out of the operation of the road, to wit, that he was engaged in repairing the track upon which trains were operated, and that, in view of that fact, * * * in order to avoid danger to trains that were or might be approaching.

108 M.—7.

\* \* \* " The next case in which the element of haste was considered is Anderson v. Great Northern Ry. Co., 74 Minn. 432, 77 N. W. 240. There the men were engaged in repairing a portion of the roadbed, and a track jack was released without warning, which permitted a part of the track to fall upon the plaintiff. The element of haste was considered applicable on account of getting out of the way of trains, and it was deemed a question of fact whether the work was or was not a railroad hazard. The same question was involved in the case of Kreuzer v. Great Northern Ry. Co., 83 Minn. 385, 86 N. W. 413, the Blomquist and Anderson cases were followed, and it was held to be a question of fact whether the work of removing a wrecked car from the main track was a hazard peculiar to railroads. The same principle was somewhat extended in the case of Tay v. Willmar & Sioux Falls Ry. Co., 100 Minn. 131, 110 N. W. 433, where the work was repairing a side track. The plaintiff was injured while engaged in taking out an old rail and putting in a new one. The foreman stated that it was necessary to hasten the repairs on account of the expected arrival of a freight and a passenger train. Referring to the Blomquist, Anderson, and Kreuzer cases, the court considered it a question of fact whether the hazard was one peculiar to railroads.

It will be observed from these various decisions that no effort was made in some of the earlier cases to specify what work the court considered within the term "operation of a railroad." It might be fairly inferred from the Lavallee, the Johnson, the Smith, and the Steffenson decisions that the court intended to limit the application of the doctrine to the movement of cars, engines, or trains in actual traffic. But, thus limited, the rule is not broad enough to include the Nichols and Mikkelson cases, and the later cases where the men were engaged in repairing some portion of the track. The movement of an engine in straightening a cable on a railroad track, or the movement of an engine in a roundhouse, is not the employment of such instrumentalities in the operation of transporting freight or passengers, and the work of repairing a bridge upon the line of road where trains are run is not connected with the operation of the road, unless the work is being conducted under circumstances amount-

ing to an emergency. The distinction is not in the character of the work, but in the manner in which it is conducted.

Where the same class of work may naturally be carried on at any other place by the employees of any other master, and there is nothing intimately connecting the work with the movement of engines, cars, or trains, then the dangers peculiar to railroading are absent. But if the work is being conducted with reference to the movement of engines or cars, then an element of danger is introduced not common to other employments, but peculiar to railroading. It is not essential that the wreckage to be removed should be on the main track, as in the Kreuzer case. The work of repairing is not necessarily confined to side tracks where the arrival of a train is expected, as in the Tay case. Without attempting to formulate a rule for all cases, it may be said that a railroad hazard exists when the work engaged in is so intimately connected with the movement of engines, cars, and trains as to render the work more dangerous for that reason.

In the case before us, through traffic was not interrupted and the main track was clear of the wreck; but the men were at work in the railroad yard under unusual circumstances. They had worked all night and the following day until seven o'clock in the evening. It was after the usual hours, and getting dark. It was necessary to get the yards clear of the wreck for the switching and movement of trains in the railroad business, and the men were taken away from their usual employment and directed to this specific work for the express purpose of rapidly relieving the situation. There is reasonable ground for the conclusion that the accident was attributable to the haste with which the men were urged, and the inference is permissible that the work engaged in was a railroad hazard.

Affirmed.