## MIKE JELOS v. OLIVER IRON MINING COMPANY.[1]

May 29, 1913.

Nos. 17,872—(59).

**Negligence of fellow servant — evidence.**
    1. Plaintiff was employed by a mining company in laying a switch and side track for the operation of trains. There is evidence that, while he had his hand underneath a rail removing a stone, two fellow employees threw down a tie on the other side of the track in such a manner that it jumped or skidded across the track and struck and injured plaintiff's hand. There

[1] Reported in 141 N. W. 843.

Note.—The authorities on the question what is a railroad hazard within statutes abolishing or restricting fellow-servant rule as to railroad employees are treated in notes in 18 L.R.A.(N.S.) 478, and 22 L.R.A.(N.S.) 969. And as to the validity of a statute abrogating fellow-servant rule, see note in 12 L.R.A. (N.S.) 1040.

was sufficient evidence to sustain a finding of a jury that these fellow-employees were negligent.

**Railroad hazard — finding sustained by evidence.**

2. Plaintiff's testimony is that the foreman gave frequent orders to hasten the work so that trains could go by and that they were stopping the operation of trains. This was denied. No trains in fact passed over either the main track or the side track at this point on this day. It does appear that the business of this crew of men was the building and shifting of tracks and switches and that the tracks in the pit were shifted as the work progressed; that no time was lost in this work; that conditions made it necessary that the work be done in as short a time as possible and that it be carried on without interruption of traffic. The jury found specifically that the foreman gave orders to hasten this work, as plaintiff testified. The evidence was sufficient to sustain this finding and to sustain a verdict based on the theory that this was a "railroad hazard."

**Assumption of risk — evidence.**

3. The fact that plaintiff had seen others throw down ties when in a hurry in such manner that they would "jump," does not give rise to an assumption by plaintiff of the risk involved in this case, since there is no evidence that ties were thrown in this manner under similar conditions on any previous occasion.

**Striking out answer as not responsive.**

4. This court does not approve the practice of striking out material testimony "as not responsive" to the question asked. But this court will never reverse a case for error in striking out testimony because not responsive, when the party assigning error might have elicited the testimony by another question.

**Charge to jury.**

5. When the charge taken as a whole submits all the issues fully and fairly, the case will not be reversed for isolated erroneous statements which could not mislead the jury.

Action in the district court for Itasca county to recover $5,000 for personal injury while in the employ of defendant. The complaint, among other matters, alleged that defendant ordered plaintiff and its other servants to work rapidly and with great and unusual haste, and pursuant to such orders they did so work. The answer alleged that plaintiff and the men working with him were fellow servants, all working together in the performance of the work; that

the risks and dangers incident to it were visible, apparent and such as are incident to the performance of the most common labor and were all seen, understood and appreciated by plaintiff; and during all the time he was fully informed as to all such risks and dangers and fully appreciated them and voluntarily assumed them. The case was tried before Stanton, J., who, when plaintiff rested, denied defendant's motion to dismiss the action, and a jury which returned a verdict of $2,500 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Frank D. Adams* and *C. C. MacCarthy,* for appellant.

*George H. Spear,* for respondent.

HALLAM, J.

Defendant operates an iron mine. In connection therewith it engages in certain railroad operations. In particular it maintains and operates, in an open pit known as the Walker pit, a main track and a number of side tracks and switches radiating therefrom, and operates upon them all of the rolling stock incident to the conduct of an open pit mine. These tracks and switches are shifted as the work progresses. On May 10, 1911, plaintiff was in defendant's employ. He was engaged with a crew of men putting in a switch to connect a side track with a main line track running into this pit. While so engaged he received an injury to his hand, and brings this action for damages. Plaintiff had a verdict. Defendant moved for judgment or for a new trial. Both motions were denied. Defendant appeals.

1. Plaintiff's account of the accident was as follows: He testified that he was taking a small stone from underneath a rail, when two of his fellow employees, carrying a tie on their shoulders, negligently threw the tie down in such a way that it jumped or skidded across the track and struck plaintiff's hand or wrist. There is ample proof of the negligence of those fellow employees. It is true plaintiff's version of the manner of the injury was denied, but the jury evidently accepted his version as true. If the accident happened as he has described, it is clear that these men were negligent. Defend-

ant's foreman Horrigan testified that there was no necessity for throwing a tie down in such a way that it would jump across the track and that if the men did so, that would be a careless and dangerous way to handle a tie.

2. The crucial question in the case is whether the defendant is, responsible to plaintiff for the negligence of these fellow-employees. Under common-law rules plaintiff would have no right of action. He claims a right to recover under the fellow servant act of this, state, which provides that:

"Every company owning or operating, as a common carrier or otherwise, a railroad, shall be liable for all damages sustained within this state by any agent or servant thereof, without contributory negligence on his part, by reason of the negligence of any other servant thereof." R. L. 1905, § 2042.

It has been the uniform decision of this court that this act applies only to employees who are exposed to the peculiar hazards incident to the operation of railroads and whose injuries are the result of such hazards. Lavallee v. St. Paul, M. & M. Ry. Co. 40 Minn. 249, 41 N. W. 974; Johnson v. St. Paul & D. R. Co. 43, Minn. 222, 45 N. W. 156, 8 L.R.A. 419. It is held that the work of constructing and repairing switches and tracks does not ordinarily involve such peculiar hazards. A rule has, however, grown up,. known as the "rule of haste," under which it is held that, if the employee is engaged in altering or repairing a track upon which trains are operated, or are to be operated, and by reason thereof the work has to be done with great and unusual haste, and such haste is an essential element in causing the accident, it can be fairly said' that the employment involves an element of hazard peculiar to the railroad business, and the statute applies.

This rule was first laid down in this state in Blomquist v. Great Northern Ry. Co. 65 Minn. 69, 67 N. W. 804. It has since been followed in numerous cases. Tay v. Willmar & S. F. Ry. Co. 100 Minn. 131, 110 N. W. 433; Janssen v. Great Northern Ry. Co. 109 Minn. 285, 123 N. W. 664; Pylaczinski v. Great Northern Ry. Co. 120 Minn. 74, 139 N. W. 147.

It is held in some of the later cases that though the necessity

for haste did not in fact exist, still if there was an order to hasten the work on account of the operation of trains, the statute applies. Janssen v. Great Northern Ry. Co. supra; Pylaczinski v. G. N. Ry. Co. supra.

Plaintiff claims that this case is within this rule; that there was necessity for great and unusual haste because of railroad operations; and also that orders to that effect were given. He testified that there were trains passing over the main track into which this switch was being built. He also testified that the foreman "told us to finish the switch so the trains can go by;" that he said, "work fast, losing too much time, train switch;" "said train stop, lose time;" "work very fast, train too much losing time, getting switch." All this testimony is contradicted by several witnesses. We think it clear from all the evidence that there had been no train on that day over this portion of this main track, except that an engine and flat car operated by this crew went to a point outside the pit and brought a load of ties. It is not so clear that plaintiff's testimony in this particular was wilfully false since there were frequent trains coming into the pit over this main track and then passing over other side tracks.

The court submitted to the jury a special question, "Did the foreman * * * order the plaintiff to work fast on the day of the alleged accident and injury prior to the said accident and injury to plaintiff?" The jury answered this question "Yes," thereby accepting plaintiff's evidence on this point as true. After a careful consideration of the whole record, we hold that this finding is sustained by the evidence. It appears beyond contradiction that this crew of men had for some time been working on tracks in this open pit, some days putting in switches, some days laying new main tracks; that there were numerous tracks running into and about this pit, and that the tracks were always being changed from one place to another to keep pace with the progress of the work; that the track gang followed the steam shovels and laid tracks as needed for their progress; that this switch and side track were being made for the purpose of putting in a steam shovel to work there; that no time was lost at this sort of work; that conditions in the pit in the move-

ment of trains and shovels made it necessary for work of this charac-
ter to be done in as short a time as possible; and that all track work
had to be carried on so there would be no interruption of traffic. The
jury probably found it not difficult to believe that, under such con-
ditions, an efficient foreman did in fact give this crew of men orders
to hurry up, as plaintiff claimed. We are not disposed to disturb
their verdict.

3. Defendant contends that this tie was handled in the customary
manner and that plaintiff assumed the risk of this method of work.
There is some evidence that ties were often thrown quite carelessly
when the men were in a hurry. But the particular negligence in
this case consisted in the throwing this tie in this manner, while
plaintiff was in such position that he was in danger of being injured
by the act. His evidence is that he did not see that these men were
about to throw their tie. There is no evidence that ties were thrown
in this manner under similar conditions on any previous occasion.
An employee does not assume the risk of customary negligence on
the part of the employer or of those for whom the employer is re-
sponsible, unless he has notice that the negligent acts are customarily
done under circumstances similar to those under which he is placed.
Bernier v. St. Paul Gaslight Co. 92 Minn. 214, 99 N. W. 788;
Hall v. Chicago, B. & N. R. Co. 46 Minn. 439, 49 N. W. 239.

4. It is contended that the trial court erred in striking out an
answer to a question "as not responsive." No effort was made later
to elicit the answer stricken out by a question to which it would be
responsive. We do not approve the practice of striking out material
testimony simply because it is not responsive to a question asked.
Such a practice serves no good purpose and entails useless delay.
But this court will never reverse a cause for error in striking out
testimony because not responsive to a question when the course is
plainly open to the party assigning the error to elicit the same tes-
timony by another question.

5. Some exception is taken to the court's charge to the jury,
particularly as to the question as to assumption of risk and the
"rule of haste." Some isolated portions of the charge if taken alone
might be subject to objection. We are of the opinion, however,

that the charge, taken as a whole, fairly submitted all the issues in the case, and that there was no erroneous statement which could mislead the jury. Under such circumstances the case will not be reversed.

Order affirmed.