# FRANK NYLUND v. DULUTH & NORTHEASTERN RAILWAY COMPANY.[1]

October 31, 1913.

Nos. 17,537—(61).

**Unloading logs — negligence of fellow servant.**
  1. Plaintiff's intestate was killed while unloading logs from a flat car.

[1] Reported in 143 N. W. 739.

Note.—On the question what is a railroad hazard within statutes abolishing or restricting fellow-servant rule as to railroad employees, see notes in 18 L.R.A. (N.S.) 478 and 22 L.R.A.(N.S.) 969.

As to the liability of a railroad company, generally, to employee for injuries caused by defectively loaded car, see note in 13 L.R.A.(N.S.) 384.

Cars were "spotted" at an unloading place alongside the Cloquet river. The logs were piled lengthwise, two piles on a car. The standards supporting them on the side of the car toward the river were pulled by means of a lever on the land side, and the logs allowed to roll into the river. Three crews, of two men each, were engaged at this work. Deceased was on the river side of a pile of logs, and his partner on the land side at the lever. The accident was caused by his partner pulling the lever while another crew was unloading a contiguous pile of logs. Uniform custom required him to wait until the adjoining crew had finished unloading so that the man on the river side would have a clear space in which to stand. The cause of the accident was the negligence of this fellow servant.

**Railroad hazard — fellow-servant act.**

2. An employee of a railroad engaged in unloading logs from cars standing on an unloading track, detached from an engine, is not engaged in employment exposed to railroad hazards, and the fellow-servant liability act of Minnesota does not apply.

**Rule of haste.**

3. The "rule of haste" has application only when the work in which the employee is engaged is required to be done with unusual haste by reason of its relation to the operation of a railroad, and such haste is an essential element in causing the accident.

**Evidence of negligence insufficient.**

4. The evidence is insufficient to show negligent failure of defendant to discharge any duty devolving upon it to give signals.

**Safe place to work.**

5. If the work is done in the customary manner, the place where deceased was employed is a safe place to work. There was accordingly no negligence on the part of defendant in the matter of furnishing a proper place to work or of proper direction of the work.

Action in the district court for St. Louis county by the administrator of the estate of August Lehto, deceased, to recover $5,000 for the death of plaintiff's intestate. The answer denied that the injury and death of the intestate were caused by any negligence whatever on its part. The case was tried before Dibell, J., who granted defendant's motion for a directed verdict. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*John A. Keyes,* for appellant.

*Howard T. Abbott* and *Abbott, MacPherran, Lewis & Gilbert,* for respondent.

HALLAM, J.

1. This action is brought to recover damages for the death of August Lehto. Deceased was unloading logs from one of defendant's cars. The logs were loaded lengthwise on flat cars, two piles on each car. They were held in place by upright standards on each side of the car. The mode of unloading was as follows: Cars were "spotted" at an unloading place alongside the Cloquet river. Then the standards on the river side of the car were pulled out and the logs allowed to roll down into the river. The standards were pulled by a lever operated from the land side of the car. The men worked in pairs, one being at the lever on the land side and the other on the river side. There were at this time three crews at work upon this train, which consisted of about 15 cars. Deceased and his partner were at the pile on the upper end of their car; two other men, Houle and Duby, were at the pile on the lower end of the same car, and another crew of two at a car farther down the track. There was a custom that two contiguous piles were not to be unloaded at the same time, and there was some evidence that the men were so instructed; the purpose of this regulation was that there should always be a clear space next to where a crew was engaged. There is some evidence that it was customary for the man operating the lever to call out to his partner before pulling it, and there is also some evidence of a custom that the man on the river side should signal his partner before the lever was to be pulled. On this occasion deceased and his partner were about to unload their pile of logs. Deceased was standing on the river side and his partner on the land side at the lever. Houle and Duby were still engaged in unloading the adjoining pile, and it was the duty of deceased and his partner to wait until they had finished. But deceased's partner pulled the lever and released the standards while Houle and Duby were still unloading their last log. Deceased had given no signal. There is evidence that his partner called to him before he pulled the lever. When the standards were pulled the logs began to fall. This frightened deceased and he ran toward the other end of the car where Houle and Duby were; the last log falling from that end caused deceased to run still farther to get out of the way, and, after running

a short distance along the side of the cars, he apparently lost his balance, and fell or jumped into the stream. Logs from the third crew then came upon him and he was drowned. On this evidence the trial court directed a verdict for defendant, and plaintiff appeals.

Defendant railway company contends that deceased was not in its employ, but in the employ of the Cloquet Lumber Company, and that that company, and not the defendant, was in charge of this work. Plaintiff contends that deceased was in the employ of defendant and that defendant was in charge of the work. The evidence on this point is unsatisfactory, but it perhaps made an issue of fact for the jury. We may assume that plaintiff's contention in this respect is true, for the case must be affirmed on other grounds.

Had deceased's partner waited until the adjoining crew had finished unloading before he pulled his lever, it is manifest the accident would not have happened. There would then have been a clear and safe place for deceased to stand, and, according to the testimony of plaintiff's own witnesses, there was no danger if the work was done in this manner. This act of the partner of deceased in thus prematurely pulling his lever was clearly negligence. Perhaps he was also negligent in pulling the lever without a signal from deceased, but, however this may be, it is clear that the negligence of this workman was the efficient cause of the accident.

2. This workman was a fellow servant of deceased. Defendant is not liable for his negligence unless the case is brought within the "fellow-servant act" of this state, making railway companies liable for injuries to employees caused by the negligence of a fellow servant. R. L. 1905, § 2042. This act was passed in 1887. It has been consistently held in a long line of cases, commencing with Lavallee v. St. Paul, M. & M. Ry. Co. 40 Minn. 249, 41 N. W. 974; and Johnson v. St. Paul & D. R. Co. 43 Minn. 222, 45 N. W. 156, 8 L.R.A. 419, that the act applies only to those who are, in the course of their employment, exposed to the peculiar hazards incident to the use and operation of railroads, and that "a railroad hazard exists when the work engaged in is so intimately connected with the movement of engines, cars and trains as to render the work more dangerous for that reason." Hanson v. Northern Pacific Ry. Co. 108 Minn.

94, 99, 121 N. W. 607, 609, 22 L.R.A.(N.S.) 968. Plaintiff contends that the employment of deceased in unloading logs from railway cars, though standing upon railway tracks detached from an engine, exposed him to the peculiar hazards incident to the use and operation of railroads. We consider, however, that that precise question was decided adversely to plaintiff's contention in the case of Pearson v. Chicago, M. & St. P. Ry. Co. 47 Minn. 9, 49 N. W. 302, in 1891. In that case the plaintiff was engaged in loading railroad iron from the ground upon a flat car, when some of the crew negligently let one of the iron rails fall upon plaintiff's arm. Mitchell, J., said: "In this case, the plaintiff's injury was not the result of any risk or danger peculiar to or directly connected with the use and operation of the railroad. The risks to which he was exposed, and which caused his injury, were not different from those to which anyone is subjected who, with others, is engaged in loading or unloading like ponderous articles. * * * The dangers to which he was exposed were precisely the same as if he and other employees of a manufacturing company had been engaged in loading railroad iron upon a flat car for shipment from the factory." We are unable to distinguish this case from the Pearson case. The fellow-servant statute does not apply.

3. Recent decisions have recognized a rule, sometimes known as the "rule of haste," under which it is held that, if the work in which the employee is engaged is required to be done with great and unusual haste by reason of its relation to the operation of a railroad, and such haste is an essential element in causing the accident, then the employment involves an element of hazard peculiar to the railroad business, and the statute applies. Blomquist v. Great Northern Ry. Co. 65 Minn. 69, 67 N. W. 804; Tay v. Willmar & Sioux Falls Ry. Co. 100 Minn. 131, 110 N. W. 433; Janssen v. Great Northern Ry. Co. 109 Minn. 285, 123 N. W. 664; Pylaczinski v. Great Northern Ry. Co. 120 Minn. 74, 139 N. W. 147; Jelos v. Oliver Iron Mining Co. 121 Minn. 473, 141 N. W. 843. The facts do not bring this case within this rule. There is no evidence that this work was required to be done with unusual haste, or that it was in fact done

with haste at all, save that the men sometimes hurried up with their load in order that they might have a longer period of rest.

4. The claim is made that it was the duty of deceased's partner, according to the custom prevailing, to give deceased notice before tripping the load, that this was in law a duty devolving upon the master which it could not delegate. Whatever may be the law on this subject, the evidence of deceased's partner, who was the first witness for plaintiff, is that he did give such warning. He weakened this testimony on cross-examination, but we think the evidence would not sustain a finding that the warning was not given.

5. It is claimed that the defendant was negligent in allowing three crews to unload logs in such close proximity without proper direction, and that therefore deceased was not furnished with a safe place to work. We cannot so hold. The testimony of plaintiff's witnesses is that, if the work is done in the customary manner so that there is a vacant space adjoining that in which each crew is working, the place is "a good safe place" and that there is then no danger. The place became unsafe in this case only when there was a departure from the customary method of doing the work. This departure from the customary method was the act of a fellow servant, for which conduct defendant was not liable.

Order affirmed.