Minneapolis, St. P. & S. S. M. R. Co. v. Industrial Comm. 153 Wis. 552.

ferent inferences might be drawn and it was for the jury to draw the one which it deemed to be correct, and that it was fairly within its province to find the necessary facts to entitle the plaintiff to recover.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

SIEBECKER, KERWIN, and TIMLIN, JJ., dissent.

―――――――

MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*April 12—May 31, 1913.*

*Workmen's Compensation Act: Railway employees: Acceptance of act by company: Not limited to shop and office employees: Statutes: Construction.*

1. As to all employees of a railway company—not merely as to those "working in shops and offices"—the company may accept the provisions of ch. 50, Laws of 1911 (secs. 2394—1 to 2394—31, Stats.). TIMLIN and KERWIN, JJ., dissent.
2. All the employees of a railway company were covered by its acceptance in general terms of the provisions of said act, although such acceptance was followed by specifications as to number of employees and places and nature of employment which related only to employees working in shops and offices.
3. The plain language of a statute cannot be rendered ambiguous by an erroneous popular conception of its intent.
4. Where a special committee of the legislature, appointed to investigate a subject, reported a bill which was divided into subjects by appropriate headings and was accompanied by explanatory notes both by the committee and by counsel who were employed to assist it, and the proposed legislation was enacted in the light of such headings and notes, they may be properly considered in determining whether there is any obscurity in the law calling for judicial construction.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action involving the question of whether railway employees, outside of those "working in shops or offices," are within the protection of ch. 50, Laws of 1911, commonly called the Workmen's Compensation Act, now secs. 2394—1 to 2394—31, inclusive, of the Statutes.

Torger Torvalson, an employee of the plaintiff and not working in a shop or office, while in the line of his duty, July 24, 1912, was accidentally killed. Prior thereto and in due course, the defendant elected to accept the provisions of ch. 50 aforesaid by filing with the *Industrial Commission* its election in this form:

"Take notice that the undersigned employer of labor in Wisconsin accepts the provisions of chapter 50, Laws of 1911, Wisconsin Statutes.

"Number of employees 1250—Number varies somewhat from time to time.

"Location of place of employment—Milwaukee, Fond du Lac, Stevens Point and other places.

"Nature of employment—Miscellaneous office work, shop work, repairing cars, etc.

"Dated at Milwaukee this 31st day of May, 1912."

The defendant, in addition to filing the election as stated, complied with all the conditions of the law essential to bring itself therein so far as it was competent to do so.

In due course, after the accident, *Ella Torvalson,* widow of the deceased and mother of three children by him, aged six, four, and two years, respectively, duly made claim for such compensation as she and her family were entitled to under the law. Thereupon, the question was raised as to whether the Compensation Act extended to railway employees, other than those "working in shops or offices." The decision was in the affirmative. Thereupon the railway company commenced this action in the circuit court for Dane

county to review the question so decided, resulting in the conclusion of the *Commission* being affirmed. This appeal is from the judgment.

For the appellant there was a brief by *W. A. Hayes,* attorney, and *John L. Erdall,* of counsel, and oral argument by *Mr. Hayes.*

For the *Industrial Commission* there was a brief by the *Attorney General* and *Byron H. Stebbins,* first assistant attorney general, and oral argument by *Mr. Stebbins.*

For the respondent *Torvalson* the cause was argued orally by *J. E. Thomas.*

A brief was also filed by *R. L. Clark,* attorney.

MARSHALL, J. The only question of any moment presented for decision is, whether it is competent for a railroad company to accept the provisions of the statute aforesaid, except as to its employees "working in shops or offices." It is appreciated that, at the time appellant filed its election, it was commonly thought that such competence did not exist. Though appellant's election was general in terms with special reference to employees working in shops or offices, doubtless, as its counsel frankly confesses was the fact, it intended to accept the Compensation Act to the fullest extent of its competency. The form used was furnished by the *Industrial Commission.* It used words of election, in general, to come under the act, as the law provides, followed by specifications as to the number of its employees, the kind of service, and where the labor was being performed. The additional features were mere matters of administration. They were not intended by the *Commission* nor by appellant to limit the words of acceptance. Moreover, the law makes no provision for any such limitation. Therefore, we have no hesitancy in affirming the decision of the circuit court, that all of appellant's employees were included in the election if the law authorized it. There is, really, no contest on this point; but,

if it were otherwise, there would hardly be room for reasonable doubt, that the *Commission* and the circuit court reached the correct conclusion. The question seems to be raised now merely for the purpose of having this court formally pass thereon.

Whether the Compensation Act extends to all railway employees, is of very great interest, because of the large number of persons affected, the hazardous nature of the employment, the manifest public policy to make such provisions for repairing the injuries to all employees so far as practicable, the evident justice of it, not as matter of charity but as matter of humanity and right both to the living and the dead, and as matter of wise public economy as well, to the end that the maimed in service and the surviving widows and orphans and other dependents of those whose service results in fatal injuries should have their losses reasonably dealt with as matter of general concern. No movement in any age has made more for the elimination of waste and the economical application of personal injury cost of production and distribution of those things which are necessary for or administer to legitimate human desires, where it belongs, and to where it must inevitably go as a final resting place, than laws of which the one in question is a distinguished type,—a crystallization, as has been said before, into legal obligation of moral duty and economic truth. The conception and appreciation thereof is such among the nations of the world that the countries which have no such system are exceptional, and consciousness of the justice and necessity therefor is confessed, in general, by all mankind where the dignity of labor has its merited significance.

In view of what has been said, that the greatest of our industries—the one for which such a law as the one in question is manifestly most needed, and it would seem most desired, by employer, employees, and the public—should be left out of the scope of its beneficent provisions, would challenge attention

556     SUPREME COURT OF WISCONSIN.     [May

Minneapolis, St. P. & S. S. M. R. Co. v. Industrial Comm. 153 Wis. 552.

as strange, "passing strange." In the circumstances we face, the inclination, if not the duty, would be to include the industry rather than to exclude it by construction, if the meaning of the law must be read out of obscurity. It would seem almost unbelievable that the legislature, in providing a system to lay the burdens of personal injury losses where they will be as soon as practicable absorbed into the products of industry, left out the most significant class, by far, of the objects of solicitude.

We must confess the idea has been prevalent that the Compensation Act was not intended to apply to railway employees, in general. That has come about, doubtless, from a sentiment which grew up while the act was under consideration in the legislature, based, largely, on a lay understanding of the classification of railway employees into those engaged in shops or offices and all others found in the first part of the act, and the indifference of, or opposition from, some of the employees as well as employers, before the special committee which prepared the bill and before other legislative committees. Somehow, but just how, no one seems to comprehend, the air, so to speak, became, during the progress of the act through the legislature, charged with the idea that there was some specialization as to railway employees and, that, supplemented with the fact of railway employers having kept aloof from the matter until appellant chose to raise the question, seems to have caused more or less of a conviction that the general class of railway employees were not within the benefits of the law.

Notwithstanding that, upon the first occasion of the question being presented to the *Commission* for decision over a year after the enactment took effect, a decision seems to have been readily reached that the law, as regards its compensation features, in letter and spirit, includes, and was intended to include, all railway employees, and the learned circuit court reached the same conclusion. It does not seem that either the *Commission* or the trial court considered that it was re-

quired to solve any ambiguity in reaching that conclusion. If that be right, it is not the first time a wrong idea, produced by the atmosphere characterizing an enactment, and the harmony therewith for a long period of time, have taken hold of the public mind so as to produce quite a settled conclusion as to legislative intent, and the creation of a condition, which, after careful search when such was required, was not found, in fact, to be either in the letter or spirit or intent of the enactment; a significant instance being the conception of the primary election law, that it rendered unlawful the holding of a political party delegate convention as a step in placing a choice of candidates on the primary ballot.

We have been constrained to remark as above, to show that we have not been unmindful of the general idea which has prevailed as to the scope of the Compensation Act. It is proper, in fact it seems a duty, to take notice of that, so far as we might otherwise be led to a too hasty conclusion as to the meaning of the law, looking only at its seemingly plain words in the light of the hope which was vitalized in its enactment and which grows with experience. The sentiments characterizing a law might have some influence to create obscurity, where otherwise it would not exist, but if after all, we find, as the circuit judge and the *Commission* did, the words of the act plain and the legislative purpose manifest, a contrary conception of it, however produced, cannot legitimately be permitted to create an obscurity to be cleared up by construction, influenced by the history of the legislative labors which constructed the law. A law, plain in its letter, may be obscure when applied to the subject with which it deals. The result may be absurd, or so harsh or unreasonable, as to produce conviction that the literal meaning is not the real purpose. But plain legislative language cannot well be rendered ambiguous by applying to it the mere direction given to public thought by events characterizing the enactment.

The bill, as it was reported to the legislature by its special committee after nearly two years of investigation and study, aided by all the legal assistance in framing it which it desired to employ, contained an exception of considerable significance in the third section as will be hereafter seen. That furnished all the basis for the idea that the law was not intended to include railway employees, generally, which can be found therein. The committee divided the proposed legislation into subjects by appropriate headnotes. The report was adopted by the legislature, after long consideration in both houses and by committees, without any change as regards the matter under consideration.

Since the bill was so considered and passed in the light of the committee's division into subjects and, further, by an exposition of its provisions both by the committee and the eminent counsel who assisted, the explanatory part by the committee is, to all intents and purposes, incorporated into the enactment, or at least may be kept in view in determining whether there is any obscurity therein, rendering judicial construction necessary, or even permissible, and the accompanying notes by counsel may also properly be considered.

Save the exception referred to, which we will incorporate in place for the better understanding of the law, the following is a copy of the bill as passed and now found in the statutes, including the designated subjects as made by the committee and preserved in the statutes.

### Abrogation of defenses.

"Section 2394—1. In any action to recover damages for a personal injury sustained within this state by an employee while engaged in the line of his duty as such, or for death resulting from personal injury so sustained, in which recovery is sought upon the ground of want of ordinary care of the employer, or of any officer, agent, or servant of the employer, it shall not be a defense:

"(1) That the employee either expressly or impliedly assumed the risk of the hazard complained of.

"(2) When such employer has at the time of the accident in a common employment four or more employees, that the injury or death was caused in whole or in part by the want of ordinary care of a fellow-servant.

"Any employer who has elected to pay compensation as hereinafter provided shall not be subject to the provisions of this section 2394—1."

### Application to railroads.

"Section 2394—3. Except as regards employees working in shops or offices of a railroad company, who are within the provisions of subsection 9 of section 1816 of the statutes, the term 'employer' as used in sections 2394—1 and 2394—2, shall not include any railroad company as defined in subsection 7 of said section 1816, said section 1816 being continued in force unaffected, except as aforesaid, by sections 2394—1 and 2394—2."

### (Excepted and continued sections.)

"Section 1816. Every railroad company shall be liable for damages for all injuries whether resulting in death or not, sustained by any of its employees, subject to the provisions hereinafter contained, regarding contributory negligence on the part of the injured employee:

"(1) When such injury is caused by a defect in any locomotive, engine, car, rail, track, roadbed, machinery or appliance used by its employees in and about the business of their employment.

"(2) When such injury shall have been sustained by any officer, agent, servant or employee of such company, while engaged in the line of his duty as such and which such injury shall have been caused in whole or in greater part by the negligence of any other officer, agent, servant or employee of such company, in the discharge of, or by reason of failure to discharge his duty as such."

[Subdivisions 3, 4, 5, 6, 7, and 8 deal with matters of practice, administration, construction, and conflict of laws.]

"(9) The provisions of this section shall not apply to employees working in shops or offices."

### Liability for compensation.

"Section 2394—4. Liability for the compensation hereafter provided for, in lieu of any other liability whatsoever,

shall exist against an employer for any personal injury acci-
dentally sustained by his employee, and for his death, if the
injury shall proximately cause death, in those cases where
the following conditions of compensation concur:

"(1) Where, at the time of the accident, both the employer
and employee are subject to the provisions of sections 2394—1
to 2394—31, inclusive, according to the succeeding sections
hereof.

"(2) Where, at the time of the accident, the employee is
performing service growing out of and incidental to his em-
ployment.

"(3) Where the injury is proximately caused by acci-
dent, and is not so caused by wilful misconduct.

"And where such conditions of compensation exist for any
personal injury or death, the right to the recovery of such
compensation pursuant to the provisions of sections 2394—1
to 2394—31, inclusive, shall be the exclusive remedy against
the employer for such injury or death; in all other cases the
liability of the employer shall be the same as if this and the
succeeding sections of sections 2394—1 to 2394—31, inclu-
sive, had not been passed, but shall be subject to the provisions
of sections 2394—1 to 2394—31, inclusive."

To the last section the committee appended, among other
things, the following: "This section defines the two classes of
employees to which sections 2394—4 and the subsequent sec-
tions apply."

### Employer defined.

Section 2394—5. This section is in general terms and in-
cludes employers without exception, subject, however, to ac-
ceptance of the provisions of sections 2394—1 to 2394—31,
inclusive.

### Election by employer.

Section 2394—6. This is in general terms prescribing the
manner of acceptance by employers of the provisions of sec-
tions 2394—1 to 2394—31, inclusive.

### Election by employee.

Section 2394—8. This is in general terms in harmony
with the preceding section prescribing the manner of employ-

ees being bound by the provisions of sections 2394—1 to 2394—31, inclusive.

The section preceding the foregoing defines employees in general terms, dividing them into two classes: 1st. Those working for public corporations; and 2d. Every person in the service of another under any contract of hire, express or implied, oral or written, . . . but not including any person whose employment is but casual or is not in the usual course of the trade, business, profession, or occupation of his employer.

To sec. 2394—7 and sec. 2394—8, covering the subject of employees and the manner of their becoming subject to the provisions of secs. 2394—1 to 2394—31, inclusive, the committee subjoined this explanation:

"These two sections define the two classes of employees to whom section 2394—4 and the subsequent sections apply. . . . All employees are within the provisions of section 2394—4 and subsequent sections of this act, unless at the (time) of entering into such employment the employee gives the employer written notice that he elects not to be subject to the provisions of the act."

The committee further adopted this explanation by counsel:

"The proposed bill may be generally divided into two parts:
"*Part 1.* Embraces the first three sections and relates to the so-called fellow-servant and assumption-of-risk defenses.
"*Part 2.* Comprises the remaining sections of the act and embraces what may be called its compensation provisions.

"Part 1 . . . operates to take away the fellow-servant and assumption-of-risk defenses as to all employers except only those who are included within the provisions of chapter 254, Laws of 1907 (sec. 1816, Stats.), being the railroad fellow-servant and contributory negligence law. Shop and office employees are included within provisions of the proposed act because the railroad act exempts them from the operation of that act. . . . The present act thus accepts the classification made by the railroad act and includes within it the entire class not subject to the railroad act. The classification made by the railroad act having been sustained by the supreme

court, it would appear to follow that the class not embraced within that act may properly be the subject of the proposed act. . . . The proposed act leaves the defense of contributory negligence intact, except as to those who elect to come within the compensation provisions. As to employers and employees who elect to come within the compensation provisions of the act, the provisions of Part 1 become immaterial, the compensation provided for being payable irrespective of negligence.

"Part 2. . . . Section 2394—4 may well be designated as the *keystone* of Part 2 or the compensation provisions of the act."

The subsequent sections of the act contain substantially only administrative features.

The foregoing picture seems to tell its own plain story, leaving no additional explanation necessary to show the legislative intent. The legislation was constructed, as the committee declared, through its counsel, in two parts, one dealing with common-law defenses and the other with the subject of compensation under a new system. The two parts are as separate as if they were embodied in separate enactments. Probably if such had been the case there would not have been a suspicion that what is designated as Part 2, headed by the words "Liability for Compensation," and introduced by sec. 2394—4 "as the keystone of it," was limited in any way by anything contained in secs. 2394—1, 2394—2, and 2394—3.

The subject treated by the latter is entirely concluded thereby and the subsequent section as a keystone introduces an independent subject. The last section of Part 1 closed with the words "said section 1816" as now existing "being continued in force unaffected, except as aforesaid, *by the preceding sections of this act."* That is plain. We propose to leave sec. 1816, modifying the common-law defenses as to the particular situations mentioned in that section as to railway employees other than those "working in shops or offices,"

without change, but to abolish specified of such defenses entirely as to the class there excepted, so that, in case of a railway company not accepting the *"provisions of this act,"* it may enjoy the benefit of the common-law defenses in negligence actions as modified in sec. 1816 in the particular situations and as to the general class of employees there dealt with; but shall not have the benefit of specified of such defenses at all as to employees "working in shops or offices." The section closing Part 1 dealt with "the preceding sections of this act," while the following "keystone" section of the next subject dealt with "the succeeding sections of this act," leaving all included within the "keystone" section who shall not accept the compensation scheme "subject to the preceding sections of this act."

Thus Part 1 (secs. 2394—1 to 2394—3) dealt with the common-law defenses of "assumption of the risk and want of ordinary care of a fellow-servant" and as regards railroad employees continued the classification in sec. 1816, preserving to those engaged in the more hazardous feature of such industry some protection against the former common-law defenses and placing the railroad employees not favored at all by the existing statute with the general mass of employees to whom were secured entire immunity from two of such defenses.

The upshot of the situation is this: Under sec. 1816, railway employees in the nonhazardous field of railroad work, were treated as not entitled to any special legislative protection, whereas, under the new scheme embodied in Part 1 of the Compensation Act, they were made the most favored class.

We see method in that when we turn to Part 2 of the act because of its having been left optional with railway corporations, as with all other private employers, whether to come in under it or stay out. To come in might be attended with some pecuniary loss as to its employees in the specially haz-

ardous features of the industry, with compensating advantages as regards its employees "working in shops or offices." Without the latter there was less inducement to encounter the peril of the former.

Manifestly the legislature would not have created a system which would, necessarily, have left irretrievably, the railway employees which were specially favored by sec. 1816 in a worse position than those not favored there at all. The lawmaking body in dealing with the next subject created competency of the employer to retrieve the less favored of their employees in Part 1 from their position by coming in under Part 2 and thus removed all distinctions not only between their employers but between them and employees in general.

What has been said seems very plain. Not only does the "keystone" section deal with the subject of compensation of injuries to the employee from an original standpoint, but does so in general terms in literal sense applying to all employees, pointing forward for all details and administrative features to the "succeeding sections of this act."

None of such succeeding sections contain in literal sense or inferential suggestion any exception. The term "employee" in sec. 2394—5 was defined in the broadest terms. There is no room to read into it any exception as to class. The provisions for accepting the act in sec. 2394—6, the definition of "employer" in sec. 2394—7, and all other facts referable back to the "keystone" section, are in harmony therewith. The note of the committee under sec. 2394—8 is to the effect that it and the preceding sections include all employees, subject to the election feature, to whom sec. 2394—4 (the keystone section) and the subsequent sections apply; and that all employees are within the provisions of sec. 2394—4. The committee in that followed the exposition of the bill by its legal adviser, and as the fact stands out quite plainly we think, that as to employees who come under the

act, regardless of the nature of the employment, "the pro-
visions of Part 1 of the act become immaterial,"—there is
as to them, no classification respecting the defenses mentioned
in sec. 1816 or in sec. 2394—1, "the compensation provided
being payable irrespective of negligence on the part of either
employer or employee."

An event occurred during the closing scenes of considering
the proposed Compensation Act by the legislature, to which
our attention was called by counsel for respondents and has
been investigated, which seems to declare plainer, even than
could be done by words, if that were possible, that the pur-
pose of Part 2 of the Compensation Act was not intended to
leave any class of railroad employees out of its beneficent pro-
visions.

After the bill as first offered had been perfected in the
senate by the adoption of numerous amendments not affecting
the question under discussion, it was passed by that body and
sent to the assembly, where it was received April 6, 1911, it
having been pending some four months upon the report of the
joint committee which, with the aid of counsel, had spent the
long period before mentioned in its preparation. April 12th
after the bill was received as aforesaid it was referred with
several assembly amendments to the committee on workmen's
compensation. If the subject of whether railway employees,
in general, should have the benefit of the new system then
came up, there is no record, but if there had been any thought
in the legislative mind to except any portion of them and that
the bill at the then stage was obscure in respect thereto, now
was the time to clear up the uncertainty. If there were any
sentiment in favor of excepting railway employees, or any
class of them, from the benefits of the new system, now was
the time to challenge the judgment of the legislature upon it,
because the final preparation was now being made to place
the bill upon final passage. If the matter was ever men-

tioned in committee, no amendment was offered there or proposed by the committee.

Upon the bill coming up in the assembly on the report of the committee for the third reading the following amendment was offered:

"Amend by inserting after line 4, section 2394—32, a new section to read: Section 2394—33. The provisions of this act shall not be interpreted, or construed, so as to extend to or include under the provisions of this act, the following classes of railroad men, to wit: engineers, firemen, conductors, brakemen, section men and line men."

It was rejected and so emphatically that no record of the vote, in detail, was preserved. Thus it seems the legislature deliberately, in effect, affirmatively declared that there should be no specialization as to railway employees under the compensation part of the new system.

From the foregoing it is considered that the *Industrial Commission* and the circuit court were right in holding that the Compensation Act, without any sufficient degree of uncertainty about it to warrant any search for solution by rules for judicial construction, affords railway companies competency to come under it, placing all their employees on the same favored plane as other employees in industrial pursuits.

*By the Court.*—The judgment is affirmed.

Timlin, J. (*dissenting*). This important case comes before us upon an appeal by the railroad company from a judgment of the circuit court affirming an order of the *Industrial Commission* holding that as to all employees of the railroad company, in whatever branch of the railroad service engaged, the company may accept the provisions of ch. 50 of the Laws of 1911 as amended by ch. 664 of the Laws of 1911, and so bring all such employees within the purview of these statutes. The appellant files a perfunctory kind of brief and argument in which it is said that it has no fault to find with the deci-

sion it appeals from. The respondents are represented by
the attorney general, who introduces his brief with the state-
ment that the appellant seems to invite affirmance, but that
notwithstanding he appears on the record for respondents
and so seeks affirmance, he deems it his duty to aid the court
by presenting "several arguments against affirmance . . .
which have not been urged by appellant." After the case
was decided but before decision announced, Mr. R. L. Clark,
an attorney and a member of the legislature which enacted
the statute in question and of the legislative committee hav-
ing the bill in charge, offered a brief in behalf of an unnamed
client stating he understood the railway company could elect
to come under the act as to shop and office employees only,
and making the further point that in the instant case only
the latter election was made, and hence that employees in the
train service could or might be misled thereby and therefore
omit to exercise their right of dissent given them by sec. 8
of the act in question.

The facts presented show that Torger Torvalson, husband of
the respondent *Ella,* was at the time of his death on July 24,
1912, in the employment of appellant coaling engines and at-
tending switch lights, and was neither a shop nor an office em-
ployee. On June 1, 1912, appellant filed with the *Industrial
Commission* a paper signed by it declaring that it accepted
the provisions of ch. 50 of the Laws of 1911; that the num-
ber of its employees was about 1,250, the location of place of
employment was at Milwaukee, Fond du Lac, Stevens Point,
and elsewhere; and that the nature of the employment was
"miscellaneous office work, shop work, repairing cars," etc.
I think it manifest from this document that neither the rail-
road company's counsel nor the *Industrial Commission* un-
derstood at the time of filing that the statute in question cov-
ered railroad employees in the train service. The general
understanding up to this time was that employees in the train
service were not affected by the provisions of the act in ques-

tion.  An attempt to amend this act so as to include such employees is now pending before the legislature and such amendment has been advocated by eminent counsel for the railroad companies before the assembly committee on labor. This bill is known as No. 588A.

The system of numbering sections of the statutes in this state is very confusing and makes interpretation more difficult by its prolixity and awkwardness of expression. The statute purports to be sec. 2394, divided into thirty-one parts or sections indicated by the numbers 1 to 31 inclusive preceded by a dash or minus sign, and some of these sections are divided into numbered paragraphs called subsections. I shall refer to the sections as such by the number following the dash and to the subsections as such by number.

Secs. 1 and 2 of the act in question take away from all employers the defense of assumption of risk and from employers having four or more employees the so-called fellow-servant defense, and then declare that an employer who has elected to pay compensation as thereinafter provided shall not be so disabled. This is followed by a provision that no contract, rule, or regulation shall exempt the employer from any of the provisions of the first section, taking away these defenses in actions for personal injury. Sec. 3 provides that except as to shop and office employees the term "employer" as used in secs. 1 and 2 shall not include a railroad company. This section also provides that sec. 1816 of the Statutes as amended is continued in force unaffected except as to shop and office employees by secs. 1 and 2. Sec. 4 contains that part of the act in question which imposes liability for compensation under the act and displaces or removes all other common-law or statutory liability of the employer for personal injury sustained by the employee while in his service. This liability to compensation, and this immunity from any other form of liability only exists "in those cases where the following conditions of compensation concur." Observe that to bring a case within this

section not one but all of the conditions mentioned must concur. What are these conditions? By sub. 1 of sec. 4 it was provided in the original act as follows:

"Where at the time of the accident both the employer and employee are subject to the provisions of this act according to the succeeding sections hereof."

This was amended at the same session by ch. 664, substituting for the words "of this act" the words "of sections 2394—1 to 2394—31 inclusive," so that the paragraph reads:

"Where at the time of the accident both the employer and employee are subject to the provisions of sections 2394—1 to 2394—31 inclusive according to the succeeding sections hereof."

Where this is not the case, of course the Compensation Act does not apply. The only succeeding sections bearing at all upon this point are secs. 5, 6, 7, and 8. Sec. 5 declares who shall be considered employers subject to the provisions of this act within the meaning of sec. 4, and this includes railroad companies. Sec. 6 provides that the employer may elect to bring himself within the provisions of the act by filing with the *Commission* a written statement to the effect that he accepts the provisions of the act. The filing of such statement brings the employer within the purview of sub. 1 of sec. 4 no doubt. There is a reason for this, because as to shop and office employees a railroad company had the right to accept the provisions of the act. But it is not alone enough, as we have seen, that the employer be subject to the provisions of the act—the employee must also be so subject. Sec. 7 defines who shall be considered employees, and standing alone is broad enough to include all employees of every railroad company by the second subsection of this section; but sec. 7 does not stand alone. By sec. 8 it is provided:

"Any employee as defined in subsection 2 of the preceding section shall be deemed to have accepted and shall, within the

meaning of section 2394—4 of this act, be subject to the provisions of this act and of any act amendatory thereof, if at the time of the accident upon which liability is claimed:

"(1) The employer charged with such liability is subject to the provisions of this act."

Observe here it is not "subject to the provisions of this act according to the succeeding sections hereof," as stated in sub. 1 of sec. 4, but, subject to all the provisions of this act. This must include the provisions of secs. 1, 2, and 3. Otherwise the employer could not be said to be "subject to the provisions of this act." But the railroad company, except as to shop and office employees, is expressly not subject to the provisions of secs. 1, 2, and 3, consequently not subject to the provisions of this act as to men in the train service. This sub. 1 of sec. 8 was amended at the same session by ch. 664 of the Laws of 1911 so as to read as follows:

"if at the time of the accident upon which liability is claimed: (1) The employer charged with such liability is subject to the provisions of sections 2394—1 to 2394—31 inclusive."

This amendment did not change the meaning of ch. 50 as originally written and enacted, but it makes the meaning clearer if possible, because it substitutes for the words "this act," which by fair construction should include the whole act, the more definite and exact expression, "sections 2394—1 to 2394—31 inclusive." And in any event the law governing this case is the amended law.

Now it cannot be gainsaid that a railroad company as employer is not, with reference to men in the train service, subject to the provisions of sec. 2394—1 or sec. 2394—2. Sec. 3 expressly excepts such employer as to such employees. How then can it be said that the employer charged with such liability is "subject to the provisions of sections 2394—1 to 2394—31 inclusive"? If it is not so subject, then, recurring to sub. 1 of sec. 4, "at the time of the accident both

the employer and employee are (not) subject to the provisions of this act according to the succeeding sections hereof." The question may be summarized as follows: The act is in effect only in cases where both employer and employee are subject to the provisions of the act according to the sections thereof succeeding sec. 4.  By one of the sections succeeding sec. 4 employees are not within the Compensation Act unless the employer is subject to all the provisions of the act.  Railroad companies (except as to shop and office employees) are not subject to all the provisions of the act.  Hence, etc.

Upon a fair construction of the act, therefore, it does not include railroad companies except as regards their shop and office employees.

But there are other considerations fortifying this view. It has long been the law of this state that:

"Whenever two acts of the legislature are susceptible of a construction which will render both operative, without doing violence to either, the court will, if possible, give them such a construction.  It is only when the nature of the provisions, or the words used, are such as to render it impossible to reconcile them, that the court will apply the doctrine of repeal by implication.  The rule of construction is that if there be two affirmative statutes, or two affirmative sections of the same statute, upon the same subject, the one does not repeal the other if they both consist together; and such a construction will be sought as will reconcile them." *Att'y Gen. ex rel. Taylor v. Brown,* 1 Wis. 513.

Now ch. 50 of the Laws of 1911 is wholly based upon mutual consent of the employer and employee to be bound thereby.  The consent of the employer must be expressed in writing filed with the commissioners; that of the employee is implied from his acceptance of or continuance in the service of such employer.  Sec. 3 of the act expressly provides that sec. 1816 and amendatory acts are continued in force unaffected except as to shop and office employees by secs. 1 and 2 of the act.

Sub. 6 of sec. 1816 provides: "No contract or receipt between any employee and a railroad company, no rule or regulation promulgated or adopted by such company, and no contract, rule or regulation in regard to any notice to be given by such employee shall exempt such corporation from the full liability imposed by this section."

Under *Att'y Gen. ex rel. Taylor v. Brown, supra,* is it impossible to reconcile ch. 50, Laws of 1911, with sec. 1816 of the Statutes? I think it is not only not impossible but there is no conflict between them. The "succeeding sections" referred to in sub. 1 of sec. 4 of said ch. 50 include sub. 1 of sec. 8 of the same chapter, and it is only the employee of an employer, in cases where the latter is subject to all the provisions of ch. 50, including secs. 1 and 2, that is bound by the implied contract of sec. 8 of ch. 50. All others are disabled from assent to the Compensation Act by sub. 6 of sec. 1816 quoted above, and unrepealed either expressly or by implication.

I do not think the point made, that by reason of the form of the statement filed by the appellant with the *Commission* train employees may be misled into waiver of giving notice in writing that they elect not to be subject to the provisions of the act, arises in the instant case, because the respondent *Ella Torvalson* is seeking to enforce the provisions of the act against the appellant. But it is something which might well be considered in the construction of the act and in the sufficiency of the filed statement in case where an injured employee seeks to recover under sec. 1816. The construction given to this act in the majority opinion is, I think, indefensible when we look into the act closely, and I fear it will finally result in the modification or total overthrow of the compensation law in this state.

I am of opinion, therefore, that because Torvalson was not a shop or office employee of the appellant there was in this case no right of recovery under ch. 50, *supra,* but the right

of recovery, if any, was under sec. 1816, *supra;* hence that the judgment of the circuit court and order of the *Industrial Commission* should be reversed upon this appeal.

I am authorized to say that Mr. Justice KERWIN concurs in this dissent.