## STATE EX REL. WINSTON-DEAR COMPANY v. DISTRICT COURT OF ST. LOUIS COUNTY AND ANOTHER.[1]

### February 20, 1920.

### No. 21,676.

**Workmen's Compensation Act — amendment of 1915 — private steam roads not common carriers.**

1. When the Workmen's Compensation Act was amended by chapter 193, Laws of 1915, so as to exclude employers of all railroad companies operating steam railroads as common carriers, the legislative intent was that private steam railroads not engaged as common carriers should remain therein.

[1]Reported in 176 N. W. 749.

**Same.**

    2. A private steam railroad, not engaged as a common carrier, which has not given notice of election not to be bound by the Workmen's Compensation Act, remains within the act and liable to injured employees, precisely as other employers.

Upon the relation of Winston-Dear Company the supreme court granted its writ of certiorari directed to the district court for St. Louis county and the Honorable William A. Cant, one of the judges thereof, to review the judgment in that court in proceedings brought under the Workmen's Compensation Act by Kate Westman, widow of Carl G. Westman, employee, against Winston-Dear Company, employer. Affirmed.

*Washburn, Bailey & Mitchell,* for relator.

*Samuel A. Anderson* filed a brief as amicus curiae.

*John Jenswold* and *John D. Jenswold,* filed a brief as amici curiae.

*William E. Tracy,* for respondents.

*Abbott, MacPherran & Gilbert,* filed a brief as amici curiae.

QUINN, J.

Certiorari to review a judgment of the district court of St. Louis county, in proceedings under the Workmen's Compensation Act. The facts are not in dispute, and as outlined by the findings of the trial court are as follows:

The relator, Winston-Dear Company, is a Minnesota corporation engaged in the business of stripping and removing the surface from iron ore mines in this state. In connection therewith it owns and operates a system of standard gauge railroad tracks, locomotives propelled by steam, railroad cars and other equipment and instrumentalities generally used in such business, but was not engaged in owning or operating such steam railroad as a common carrier. On April 6, 1919, and for some time prior thereto, relator was engaged in stripping and removing the surface from Sagamore Mine, at Riverton, in this state, where the deceased, Carl G. Westman, was in its employ as a locomotive engineer, running and operating one of relator's locomotives hauling strippings by trainloads from said mine. On that day while so engaged in the regular course of his employment as such engineer, in hauling one of relator's trains so loaded with strippings, said employee was fatally injured by an

accident arising out of and in the course of his employment. The relators had full and immediate notice of all the facts. Westman was 32 years of age, unmarried, and died intestate, leaving him surviving, as his sole heirs, his father and mother, the petitioners herein, who were his partial dependents and to whom he had regularly contributed a portion of his monthly earnings, which for some time had been at the rate of $125 per month. At the time of the accident both the employers and employee were subject to the Minnesota Workmen's Compensation Law and the petitioners are entitled to compensation under its provisions in the sum of $6.50 per week for 300 weeks, and, in addition thereto, $100 on account of burial and funeral expenses.

As stated in relator's brief the only question involved is whether the rights of the parties are controlled by the Workmen's Compensation Act, or by chapter 187, p. 253, Laws of 1915, the employer, though operating a steam railroad, not being engaged in the business of a common carrier. Our conclusion is in harmony with that of the learned trial court to the effect that the rights of the parties are controlled by the compensation act.

It is contended that such conclusion is not sound, and the argument is based upon the provisions of chapter 187, p. 253, Laws of 1915, wherein it is provided that every company or corporation owning or operating "as a common carrier or otherwise" a steam railroad or railway in the state of Minnesota, shall be liable in damages to any employee suffering injury while engaged in such employment; or, in case of death, to such employee's parents or his next of kin, such injury or death resulting in whole or in part from the negligence of his fellow-servants. The statute is a re-enactment of the prior fellow-servant law as applied to commercial railroads, and it is claimed that the new statute imposes liability upon all companies and corporations operating steam railroads, as common carriers or otherwise, and that the words "or otherwise," as used in this statute, include a steam railroad not operating as a common carrier. The words "by common carrier or otherwise," are not found in the original fellow-servant statute. They make their first appearance in the law by the general statutory revision of 1905. Just what the revision commission intended by the use of those words is not quite clear, for they add

nothing to the statute not covered by the prior construction of the original act, under which the private carrier was held liable.

But, in that view of the case, the question involved at this time comes down to a narrow compass, and is whether the private road is within the compensation act or liable under chapter 187. This is made clear by chapter 193, p. 258, Laws of 1915. It must be conceded, at least we so hold, that both the common carrier steam railroad, and the private steam railroad not engaged as a common carrier, are included within the provisions of the compensation act, and so remain, unless by affirmative action on their part or by statute they are removed therefrom. Such clearly was the intention of the legislature in the enactment of the compensation law, and a statute similar to our own has been so construed. Minneapolis, etc. Ry. Co. v. Industrial Commission, 153 Wis. 552, 141 N. W. 1119, Ann. Cas. 1914D, 655, and Waldum v. Lake Superior T. & T. Ry. Co. 169 Wis. 137, 170 N. W. 729. The defendant company herein and like private railroads are not included in the express exceptions found in the compensation act, as it was originally enacted or subsequently amended, and it seems clear that, by the enactment of chapter 193, p. 258, Laws of 1915, by which the common carrier by steam railroad was specially taken out of the compensation act, the legislature intended that such private steam railroads should remain therein. We so construe the statute, and hold that the private steam railroad not engaged as a common carrier, and which has not given the notice of election not to be bound by the act, as thereby provided, is within the compensation act, and liable to injured employees according to its terms and provisions, precisely as other employers. If notice of an election not to be bound by the act is given by such a railroad company, then it is liable under chapter 187, p. 253, Laws of 1915, for injuries negligently caused by fellow-servants.

Such seems to have been the general view of the courts heretofore engaged in administering the compensation law, and in our view is the only conclusion consistent with the proper construction of the statutes.

Judgment affirmed.


DIBELL, J. (dissenting).

I dissent.

Prior to the Workmen's Compensation Act of 1913 a locomotive engineer, like Westman, whether in the service of a common carrier railroad or a private road like a mining railroad, was within the protection of Laws 1887, p. 69, c. 13. This act, commonly called the railway fellow-servant act, applied to "every railroad corporation owning or operating a railroad in this state." As changed in phraseology by the revision of 1905 it applied to "every company owning or operating, as a common carrier or otherwise, a railroad," etc. R. L. 1905, § 2042; G. S. 1913, § 4427.

There was no exception in the Workmen's Compensation Act of 1913 of railroads or railroad employees, except that section 8 excluded those engaged in interstate commerce. Laws 1913, p. 675, c. 467, § 8; G. S. 1913, § 8202. And the portion of the act defining words and phrases provided that employers and employees should include all not excluded by section 8. Laws 1913, p. 675, c. 467, § 34, d, g; G. S. 1913, § 8230, d, g. Intrastate railway employees, whether in the service of common carrier roads or private roads like mining and logging roads, before then governed by the railway fellow-servant act of 1887, came within the compensation act.

On April 20, 1915, the legislature passed an act, conveniently called the Railway Employers' Liability Act, applying to "every company, person or corporation owning or operating, as a common carrier or otherwise, a steam railroad or railway in the state of Minnesota." Laws 1915, p. 253, c. 187. It was not a re-enactment of the fellow-servant act of 1887. It was modeled upon the Federal Employers' Liability Act. U. S. Comp. St. §§ 8657-8665. Its purpose was to give to the railway men to whom it applied substantially the same protection that Congress gave to employees in interstate commerce. It abolished the fellow-servant rule, adopted the doctrine of comparative negligence, deprived the railroad of the defense of contributory negligence where its violation of a statute enacted for the safety of employees contributed to the injury and in a like situation deprived it of the defense of assumption of risks, and it set no limit on the amount of recovery in the event of death. That its language was necessarily applicable to locomotive engineers working on mining roads admits of no debate. The language of the act of 1887 was narrower, but it applied to mining and logging roads. Kline v. Minne-

sota Iron Co. 93 Minn. 63, 100 N. W. 681; Schus v. Powers-Simpson Co. 85 Minn. 447, 89 N. W. 68, 69 L.R.A. 887. The broader language of the revision of 1905, which is like the language of chapter 187, except that the latter refers to steam railroads, included mining and logging railroads. Whitmore v. Oliver Iron Mining Co. 114 Minn. 532, 131 N. W. 1135; Jelos v. Oliver Iron Mining Co. 121 Minn. 473, 141 N. W. 843; Nylund v. Duluth & N. E. Ry. Co. 123 Minn. 249, 143 N. W. 739.

On the same day, April 20, 1915, the legislature passed a statute amending section 8 of the compensation act, before referred to, as that section is found in G. S. 1913, § 8202, to which the amendatory statute referred, by simplifying the language and providing that the compensation act should not apply to a "common carrier by steam railroad." This language excluded interstate and intrastate common carrier steam railroads. The statute said nothing about steam railroads which were not common carriers, such as mining and logging roads.

Chapter 187 was introduced on January 11 and chapter 193 on February 15. Both passed on April 17, and both received the Governor's approval on April 20.

The prevailing opinion proceeds upon the theory that the taking of common carrier roads out of the compensation act by chapter 193 evidenced a purpose to leave noncommon carrier roads within it. Unquestionably this is so when we confine ourselves to the language of chapter 193. So far as the statute shows, the legislature had no thought of mining roads. But what of chapter 187 which betokens, as clearly as language can, and in language judicially construed long before, a purpose to give employees of such a road as a mining road the benefit of its provisions? Why should chapter 193, having no positive effect upon others than common carrier railroad men, wholly negative as to mining railroad men, be held to override the positively expressed intent of chapter 187 to keep them with carrier men where they had been since the fellow-servant act of 1887?

If chapter 193 had not been enacted, would chapter 187 have been effective? It seems to me it would have been. And it seems to me that the necessary result of the majority opinion is that it would not have been. If effective it was necessarily effective as to employees of all steam railroads, whether common carrier or otherwise, just as the railway fel-

low-servant statute was before the compensation act of 1913.   Chapter 187 referred to a special class of men to whom it gave special protection. The legislative intent was that they should not be within the compensation act.   It was not necessary that they be taken out of the compensation act by a specific repeal.   Chapter 187 gave new rights to certain men operating steam railroads, common carrier or otherwise, and imposed upon such railroads corresponding new liabilities.   To create such rights and impose such liabilities it was not necessary specifically to repeal a statute giving different rights.   The new statute was effective according to its terms without a repeal.

If chapter 193 had been approved a few days earlier, chapter 187 would have been effective as to all intrastate men, common carrier or otherwise, and if approved a few days later the result would have been the same; and so if it had never passed at all, but since it was passed the same day a different result is held necessary.   It seems to me a mistake to give so great effect to chapter 193, even a strained effect, making it control and nullify in part the conceded and judicially construed meaning of chapter 187.   It is well enough to say that the legislature, when it enacted chapter 193, did not intend to take mining road men out of the compensation act.   It said nothing about them.   They were not mentioned in the amended or amendatory statute.   But why let that chapter control the meaning of a definite statute like chapter 187?   When the legislature enacted chapter 187 it intended to include mining railroad men, and their inclusion was not inconsistent with chapter 193.   The practical fact is that railroad men did not want to be within the compensation act. Both chapter 187 and 193 were in favor of railroad men.   The two acts were introduced at different times and had an independent course through the legislature.   Railroad men wanted chapter 187, which put them on an equality with those engaged in interstate commerce.   Two years before a bill of this character, omitting roads not engaged as common carriers, failed of passage.   They did not know whether chapter 187 would become a law.   Chapter 193 was good so far as it went and took common carrier men out of the compensation act, and presumably put them subject to the original fellow-servant act.   What all most wanted was chapter 187.   It so happens that both were passed the same day, and the result is a holding that chapter 193, wholly unimportant if chapter 187 passed, of no

arguable effect if it had passed a day earlier or a day later, half nullifies it. The opposite construction impairs the meaning of neither statute.

To my mind it is unthinkable that the legislature, after working out a railway employers' liability act, modeled upon the Federal act, and concededly applicable by its language to mining roads, intended by an act like chapter 193, approved on the same day as chapter 187, and of no effect if passed a day earlier or a day later, to put employees of private railroads out of a class into which chapter 187 concededly put them and where they had been since 1887.

If there is doubt as to the proper construction it should be resolved in favor of the railroad men for whom it was enacted and upon whom the legislature intended to confer beneficial rights. They have always been considered by the legislature, and upon grounds not fanciful, as in a class by themselves so far as concerns legislation for their physical protection against injury, and have been accorded special consideration. They do not want the compensation act. The private roads do want it. Sometimes the compensation act, though the compensation is meager, is better for the injured employee than chapter 187, but usually not so. Some time there may be a railway compensation act which will equitably protect railway employees. The case before us involves hardship to the beneficiaries, if the compensation act is not applied, and puts the defendant employer in the attitude of making a harsh defense. There is a generous concession in the stipulation of facts that Westman, who was killed by a car dumping or tipping to the side and striking him as he was fixing the air-brake with a hammer, was at the time contributarily negligent, and assumed the risks, and thereby his death was solely caused, and that the defendant was without fault—all facts, if facts, irrelevant in the administration of the compensation act, but so material as to preclude a recovery under chapter 187, for they negative every ground of liability which the statute gives. The true construction is not dependent upon the character of the case which first comes.

The compensation act of 1913 was amended by an act which passed the legislature on April 14, and received the Governor's approval on April 21. Laws 1915, p. 285, c. 209. It is not urged, and it cannot be successfully, that if chapter 187 applied to mining railroad men, chapter 20, approved a day later, changes it, though section 34g(2), referring

back to section 8, was carried into it from the 1913 act by section 17. In fact the section 8, to which the legislature referred, was section 8 unamended.

There are cited Minneapolis, etc. Ry. Co. v. Industrial Com. 153 Wis. 552, 141 N. W. 1119, Ann. Cas. 1914D, 655, and Waldum v. Lake Superior T. & T. Ry. Co. 169 Wis. 137, 170 N. W. 729. They involve constructions, under two different statutes, one an amendment of the other, of the provisions of the Wisconsin compensation act. They are of no service in determining the question before us, that is, the application of chapter 187, which involves no difficulty except for the potency ascribed to chapter 193. The Wisconsin court did not have before it a contest between its compensation act and a later railway employer's liability act in terms giving new rights to employees who before worked out their rights under the compensation act.